**Michael B. SHAFFER, Appellant,**

v.

**Hon. James R. SCHLESINGER, Secretary of Defense, et al., Appellees.**

Nos. 75–1569 and 75–2257.

United States Court of Appeals, Third Circuit.

Argued Nov. 10, 1975.

Decided Feb. 3, 1976.

As Amended Feb. 23, 1976.

Jeremiah S. Gutman, Melvin L. Wulf, New York City, William V. Kolshorn, Jr., Trenton, N. J., for appellant.

Jonathan L. Goldstein, Andrew M. Higgins, Newark, N. J., for appellees.

Before ALDISERT, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Michael B. Shaffer, a Second Lieutenant in the United States Army, sought a writ of habeas corpus to effect his discharge on the ground that he was a conscientious objector. Petitioner had sought the writ after his claim for conscientious objector status had been denied by the Army Conscientious Objector Review Board ("Board"). The district court, concluding that there was a basis in fact to support the Board's determination that petitioner's beliefs were not sincerely held, dismissed the writ. From our review of the record, we are satisfied that the Board's decision had no basis in fact, and accordingly, we reverse.

I

From 1960 to 1964, while an undergraduate, petitioner was a member of the Reserve Officers' Training Corps ("ROTC"). Thereafter, petitioner pursued graduate studies, during which he continued to be a member of the ROTC. In 1967, he was appointed a Second Lieutenant in the United States Army Reserve. Petitioner subsequently applied for and received a defer-

ment to postpone active duty from July 1, 1967 until April 6, 1970 in order to study for a degree in law. Apparently, petitioner ceased his law school studies after the first week of classes. He did not inform the Army of his change in status until the spring of 1969.

On April 15, 1970, petitioner entered on active duty in the United States Army and was stationed at Fort Belvoir, Virginia. On May 12, 1970, he notified his commanding officer of his intention to apply for a discharge as a conscientious objector. Petitioner subsequently filed his application for discharge on May 25, 1970.

In his application for discharge, petitioner stated that his religious beliefs compelled him to regard participation in all war as immoral; that the "taking of human life is morally wrong and is contrary to the teaching of Jesus Christ." App. at 19a.[1] Petitioner had been raised in the Catholic faith and he stated that his religious beliefs derived from his Catholic background and education. He also stated that his beliefs were influenced by his parents, an encounter group, a visit to the Middle East and a meditation class he had attended. Accord-

ing to petitioner, when he received his commission in 1967 he had "misgivings about accepting it while the war in Vietnam continued" but he did not consider himself to be a conscientious objector. App. at 21a. He had been moving toward a "pacifist position" for some time, but it was not until beginning active duty that he realized he was opposed to all war. He was "torn between [his] obligation to country and a desire to remain true to [his] convictions." After coming on active duty, he "realized that to be consistent to [him]self and [his] religious beliefs [he] could not participate in the military at all." Id. at 23a.[2] Thirteen letters of recommendation were appended to petitioner's application attesting to petitioner's religious beliefs and sincerity.

Pursuant to Army Regulation 635–20, petitioner was interviewed by a chaplain, a psychiatrist, and an officer of at least grade 0–3 experienced in conscientious objection applications. The chaplain found petitioner to be sincere in his religious beliefs but did not state reasons to support this conclusion. Petitioner was found to be free from mental disturbance by the psychiatrist. Lieutenant Colonel Howard interviewed peti-

---

1. Petitioner described the nature of his beliefs as follows:

   I believe that the Catholic faith, upon which I base my religious beliefs, is the embodiment of the teachings of Jesus Christ. For me the essence of Christianity is love for one's neighbor and reverence for human life. Furthermore I believe that the teachings of the Catholic Church specifically condemn the use of war as a means of settling disputes in the modern world.

   My religious beliefs compel me to regard participation in all war as immoral and for that reason I cannot in good conscience continue to serve in the U.S. Army.

   App. at 20a.

2. Petitioner stated that his beliefs matured in the following manner:

   For some time I have been moving towards a pacifist position but until the last few weeks did not realize that I had become a conscientious objector to all war. Initially, in fact, my love of flying motivated me to consider volunteering for the Army Flight Program. In reaching my decision to forgo flight training I was forced to re-examine the basic inconsistencies between the dictates of my conscience and the goals and expecta-

tions of the military. At that point I realized that to be consistent to myself and my religion I could not contribute to the mission of the military in any form whatsoever. I realized then that the entire orientation of my military training was directed towards the killing and destruction of the enemy or supporting others to do so. We had studied and seen restricted films on the effects of nuclear, chemical and biological weapons; one showed the effects of an artificially produced food poison on laboratory monkeys and another, the effects of defoliation in Vietnam. We were shown maps of parts of Vietnam in which there are so many bomb craters that they have become permanent topographical features. These experiences made me realize that I cannot remain on active duty with a clear conscience. Until individuals take a stand against the use of mass killing and destruction, war will continue. My application for conscientious objector status is a sincere stand for what I believe—that the taking of human life or contributing to the taking of human life is wrong and contrary to the message of Christ.

App. at 23a.

tioner twice and concluded that petitioner was "totally insincere, his professions of religious pacifism [had] no real substance, and he [was] making application for a discharge as a conscientious objector solely for his own personal gain." App. at 47a. Lt. Col. Howard reached this conclusion because petitioner had admitted he enrolled in graduate school "more or less" to avoid active duty, because he failed to attend law school classes without notifying the military of his change in status and because his beliefs had been influenced by a pacifist encounter group. Petitioner was also interviewed by Major Phillip Custer, petitioner's student supervisor, who found petitioner to be insincere because he had voluntarily participated in the ROTC, because his beliefs had matured in only one month of military service and because they represented a complete reversal from his upbringing as the son and grandson of professional military officers.

Thereafter, petitioner's application was forwarded to Colonel Sinko, Secretary at Fort Belvoir. Col. Sinko did not interview petitioner but did study his application and recommended that the application be denied. The application was then forwarded to Brigadier General Hunt, Assistant Commandant of Fort Belvoir, and to Major General Gribble, Post Commander and Commandant, neither of whom interviewed petitioner. Both Gen. Hunt and Maj. Gen. Gribble recommended disapproval without stating reasons for their recommendations. These negative recommendations were submitted without petitioner's knowledge.

On June 17, 1970, the Army Conscientious Objector Review Board denied petitioner conscientious objector status on the sole ground that he did not sincerely hold the views he professed in his application. The Board did not interview petitioner but based its conclusion on the reports and recommendations of Lt. Col. Howard, Maj. Custer, Col. Sinko, Brig. Gen. Hunt and Maj. Gen. Gribble. On January 27, 1975,[3] petitioner commenced the instant action in the United States District Court for the District of New Jersey, which denied Shaffer's petition because it found a basis in fact to support the Board's determination of insincerity.

## II

■ Our standard of review of the conscientious objector claims of active military personnel, as in the case of preinduction conscientious objector claims presented to local draft boards, is the narrow one of whether there is a basis in fact for the military's finding that an applicant has not presented a valid conscientious objector claim. *Smith v. Laird*, 486 F.2d 307, 309 (10th Cir. 1973); *United States ex rel. Checkman v. Laird*, 469 F.2d 773, 778 (2d Cir. 1972); see *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); cf. *Scott v. Commanding Officer*, 431 F.2d 1132, 1138 (3d Cir. 1970).

To qualify under AR 635–20 for a discharge from the armed forces as a conscientious objector,[4] an applicant must establish that he is opposed to participation to war in any form;[5] that his opposition to war is rooted in "religious training and beliefs" as defined in *Welsh v. United States*, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) and

---

**3.** Following the denial of petitioner's application for discharge, he was ordered to draw a weapon from the arms room. He refused to do so, and he was charged with violations of Article 90 of the Uniform Code of Military Justice, 10 U.S.C. § 890 (1970). Petitioner subsequently failed to appear at his preliminary hearing and on September 10, 1970, he was listed officially as absent without leave. Petitioner and his wife remained in Canada until January 27, 1975, when he voluntarily surrendered himself to military authorities at Fort Dix, New Jersey. On January 30, 1975, the district court entered a temporary restraining order restraining the Army from proceeding with any court martial against petitioner until a determination on the merits of his petition for a writ of habeas corpus. This order expired on February 9, 1975. Fed.R.Civ.P. 65(b). Petitioner has been placed on excess leave pending a decision in this case.

**4.** These criteria are incorporated into AR 635–20 and into Department of Defense Regulation 1300.6, 32 C.F.R. § 75 (1975).

**5.** *Gillette v. United States,* 401 U.S. 437, 447, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).

in *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); that his beliefs are sincerely held;[6] and that his beliefs did not become fixed until after entry into service.[7] The Board did not find, and the Army does not now contend, that petitioner's professed beliefs failed to meet the tests of *Welsh* and *Seeger* or that those beliefs did not "crystallize" after his entry into service. Instead, the Board denied petitioner's application because it found that petitioner did not sincerely hold the views that he professed in his application.

■ Because petitioner has established a *prima facie* case of entitlement to a discharge, it is incumbent on the Board to point to facts in petitioner's record to support its finding of insincerity. *Smith v. Laird*, 486 F.2d 307, 310 (10th Cir. 1973).[8] While we realize that sincerity is, of course, a subjective state of mind, *Witmer v. United States*, 348 U.S. 375, 381–82, 75 S.Ct. 392, 99 L.Ed. 428 (1955), the Board is not free merely to disbelieve petitioner. A mere suspicion or surmise as to an applicant's motivation is not a basis in fact. *Dickinson v. United States*, 346 U.S. 389, 397, 74 S.Ct. 152, 98 L.Ed. 132 (1953); *Helwick v. Laird*, 438 F.2d 959, 963 (5th Cir. 1971). The Board "must show some hard, reliable, provable, facts which would provide a basis for disbelieving the applicant's sincerity, or it must show something concrete in the record which substantially blurs the picture painted by the applicant." *Smith v. Laird, supra* at 310; *United States ex rel. Check-*

man *v. Laird*, 469 F.2d 773, 778 (2d Cir. 1972); *Helwick v. Laird, supra* at 963.

The Board set forth the reasons for its finding of insincerity in three lettered paragraphs. We shall examine them seriatim.

In paragraph a, the Board stated:

LTC N. A. Howard, Jr., an officer knowledgeable in policies and procedures relating to conscientious objector matters and before whom Shaffer appeared, concluded that Shaffer is not sincere. "LT Shaffer admits he enrolled in graduate school to 'more or less' avoid active duty. His failure to actually attend classes, except for one week, subsequent to June 1968, and failure to notify military authority of his status until the Spring of 1969, indicates a covert attempt to delude the authorities and avoid military service. By these actions, Lt. Shaffer exhibited tendencies of questionable character and integrity and a capacity to overlook truth and responsibility for personal gain. . . . After two interviews with LT Shaffer and a careful review of all supporting documentation, I am convinced he is totally insincere, his professions of religious pacifism have no real substance, and he is making application for conscientious objection solely for his own personal gain."

The only "facts" contained in this paragraph are that petitioner admitted that he enrolled in graduate school "more or less" to avoid active duty and that he failed to

---

6. *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *Witmer v. United States*, 348 U.S. 375, 381–82, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

7. AR 635–20 ¶ 3(b); *see e. g., Nurnberg v. Froehlke*, 489 F.2d 843, 847 (2d Cir. 1973); *Morrison v. Larsen*, 446 F.2d 250, 253–55 (9th Cir. 1971); *Helwick v. Laird*, 438 F.2d 959, 965–66 (5th Cir. 1971). AR 635–20 ¶ 3 provides, *inter alia*:

Policy. a. Consideration will be given to requests for separation based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the military service.

b. Federal courts have held that a claim to exemption from military service under Selec-

tive Service laws must be interposed prior to notice of induction, and failure to make timely claim for exemption constitutes a waiver of the right to claim. However, claims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service, will be considered. Requests for discharge after entering military service will not be favorably considered when—(1) Based on conscientious objection which existed, but which was not claimed prior to induction, enlistment, or appointment. . . .

8. *See United States ex rel. Checkman v. Laird*, 469 F.2d 773, 778 (2d Cir. 1972); *Scott v. Commanding Officer*, 431 F.2d 1132, 1138 (3d Cir. 1970).

notify military authorities in 1968 that he was no longer attending graduate school classes.

■ In our view, these facts indicate nothing about the sincerity with which petitioner held his beliefs in 1970. First, the two to three year time lapse between these events and petitioner's application for discharge casts substantial doubt on the probative value of these facts.[9] In addition, these facts indicate only the efforts of a young man seeking to postpone the date on which he must inevitably choose between an emerging position of non-violence and his deeply felt obligation to his country derived from his background as the son and grandson of career military officers. The momentous nature of his decision to apply for conscientious objector status cannot be gainsaid, and if he sought to postpone the day on which he must finally determine where his future path lay, we cannot say that that action provides a basis from which to infer insincerity. While petitioner's failure to notify the military of his change in status might be a basis for suspecting petitioner's credibility in general, we have stated above that a mere suspicion is an insufficient basis in fact. *See Ferrand v. Seamans*, 488 F.2d 1386, 1390 (2d Cir. 1973). Numerous courts have recognized that an applicant's efforts to postpone the confrontation between obligation and conscience is not a sufficient basis to support a finding of insincerity. *See, e. g., id.; Smith v. Laird*, 486 F.2d 307, 313 (10th Cir. 1973); *Tressan v. Laird*, 454 F.2d 761, 763 (9th Cir. 1972); *United States ex rel. Brooks v. Clifford*, 409 F.2d 700, 707 (4th Cir. 1969).[10]

The second asserted reason for the Board's finding of insincerity was set forth in paragraph b of its decision, as follows:

b. Shaffer's student supervisor USAES, Major Phillip Custer personally interviewed Shaffer and found him in-

sincere. "I have interviewed LT Shaffer concerning his application for classification as a conscientious objector. His claim is based on his religious convictions and his pacifist position, both of which he says have 'matured' since his entry on active duty. His record in ROTC indicates that he is the son and grandson of career military officers and that in his application he stated that he desired to be a part of the military himself. Not only his successful completion of ROTC but the fact that he was a Army 'brat' indicates that LT Shaffer was knowledgeable about the United States Military, and its overall missions of combat operations prior to his entry on active duty. It is difficult for me to accept the claim that he is sincere in his beliefs since they have matured in only 1 month of military service and represent an entire reversal from his upbringing as a son of a professional military man."

The facts contained in paragraph b are that petitioner voluntarily participated in ROTC, that he was the son and grandson of career military officers and that his beliefs crystallized after one month of military service. These facts are insufficient, both individually and collectively, to support a finding of insincerity.

■ It is long since settled that voluntary assumption of military obligations does not provide a basis in fact for a finding of insincerity. *See, e. g., Dietrich v. Tarleton*, 154 U.S.App.D.C. 47, 473 F.2d 177, 178 (D.C. Cir.1972); *United States ex rel. Greenwood v. Resor*, 439 F.2d 1249, 1252 (4th Cir. 1971); *Bates v. Commanding Officer*, 413 F.2d 475, 478 (1st Cir. 1969). Petitioner stated in his application that at the time he became a member of the ROTC, he did not consider himself to be a conscientious objector. His views evolved and congealed over a period of years and it would be illogical and indeed inconsistent with AR 635–20 to hold that

---

9. We do not hold that the Board can never rely on facts occurring prior to crystallization as bases for an inference of insincerity. However, as the time period between the events and crystallization increases, the probative value of the facts decreases.

10. *See also United States v. Rutherford*, 437 F.2d 182 (8th Cir. 1971); *United States v. Cummins*, 425 F.2d 646 (8th Cir. 1970); *United States v. Bornemann*, 424 F.2d 1343 (2d Cir. 1970).

because he once voluntarily participated in the military, he could not thereafter sincerely assert conscientious objector beliefs.

That petitioner was a son and grandson of career military officers is clearly an inadequate basis in fact. First, petitioner's father wrote a letter to the Board attesting to his son's sincerity.[11] Second, so to hold would be to deny the relief provided in AR 635–20 to offspring of career military officers; the illogic of such a position is apparent. Maj. Custer found that petitioner's present position "represents an entire reversal from his upbringing as the son of a professional military officer" and that because he was an Army "brat," he was knowledgeable about the military prior to entry on active service. However, Maj. Custer's conclusions contradict completely the description of petitioner's upbringing by his mother and father. Petitioner's father stated that "[t]he real purpose of the military, the bombing, the killing and maiming and the general destruction was never forcefully brought to his attention until the bloodbath of South East Asia." Both parents described petitioner as demonstrating pacifistic tendencies from an early age. App. at 39a–41a. We see no reason in the record to accord greater weight to Maj. Custer's surmise as to petitioner's upbringing than to the statements of petitioner's parents.

■ The fact that petitioner's beliefs crystallized after only one month of active service also is an insufficient basis in fact. Petitioner stated in his application that he was moving toward a conscientious objector position prior to entry into service and that it was not until he entered active service that he was forced to decide precisely the nature of his views and whether to follow the dictates of these beliefs. It is not surprising to us that his decision was made after only one month in service and that fact alone is no indicium of insincerity.[12] The cases are legion which hold that the timing of an application for conscientious objector status is not a sufficient basis in fact to support a finding of insincerity.[13] In *Smith v. Laird*, 486 F.2d 307 (10th Cir. 1973), the petitioner applied for a conscientious objector discharge on the same day that he took his oath of office; in the opinion of the court, this was not a sufficient basis in fact for a finding of insincerity. Similarly, in *Helwick v. Laird*, 438 F.2d 959 (5th Cir. 1971), the court found the fact that the applicant had sought a discharge after only two and one-half months of active service to be an insufficient basis in fact.

■ While the district court considered the facts contained in Maj. Custer's report to be inadequate when considered individually, the court held that when taken together the facts provided a sufficient basis in fact. In our view, the particular facts cited by Maj. Custer gain no greater significance when bundled together than they have separately.

11. Petitioner's father concluded his letter as follows:

I am sure Michael is sincere in his Christian beliefs as a Catholic and that in the last year he has been deeply reconsidering his personal philosophy. As a result since entering on active duty he has finally and sincerely, I believe, concluded that being a conscientious objector is the only morally honest course he can follow concerning the Vietnam or any other war.

Considering my own feelings, I am sorry that it has become necessary for Michael to apply for the C O separation from the military service; however, considering his deep religious beliefs and the unjustified Vietnam war that exemplifies the futility and horror of a war that forces young men to kill one another, murder civilians and destroy a whole civilized country, I can see no other course for him to take.

App. at 39a.

12. *See Scott v. Commanding Officer*, 431 F.2d 1132, 1138–42 (3d Cir. 1970) (analysis of decision-making processes) (Aldisert, J., concurring). That one's beliefs can change dramatically in a short period of time was demonstrated long ago by St. Paul on the road to Damascus. The Acts 9:1–15.

13. *See, e. g., United States ex rel. Greenwood v. Resor*, 439 F.2d 1249 (4th Cir. 1971); *Helwick v. Laird*, 438 F.2d 959 (5th Cir. 1971); *United States ex rel. Brooks v. Clifford*, 409 F.2d 700 (4th Cir. 1970); *Logemann v. Laird*, 346 F.Supp. 686 (E.D.Pa.1972), *aff'd by judgment order*, 475 F.2d 1395 (3d Cir. 1973).

The Board's final stated basis for its recommendation was contained in paragraph c: "The Secretary and Asst. Commandant of USAES and the Commanding General USAEC & FB Ft. Belvoir all recommended disapproval of Shaffer's application." Assuming *arguendo* the propriety of the Board's reliance on these recommendations,[14] we nevertheless find them to be insufficient bases in fact for the Board's determination of insincerity. We ascribe no weight to Brig. Gen. Hunt's and Maj. Gen. Gribble's recommendations because they are conclusory in nature and contain no facts in support of their conclusions. *See Scott v. Commanding Officer*, 431 F.2d 1132, 1136–38 (3d Cir. 1970). Col. Sinko, who did not interview petitioner, based his recommendation solely on the reports of Lt. Col. Howard and Maj. Custer, and we have discussed above the inadequacy of the facts contained in those reports.

As a final basis in fact to support the Board's conclusion, the Army points to Lt. Col. Howard's statement that petitioner's decision to become a conscientious objector was influenced by his inability to justify his position in the military to a peace oriented, pacifist encounter group, of which petitioner was a member. App. at 47a.[15] The Board did not cite this statement of Lt. Col. Howard as a basis for their finding of insincerity. Thus, it is possible that the Board rejected, *sub silentio*, reliance on this statement of Lt. Col. Howard.[16] However, even assuming that the Board might have relied on Lt. Col. Howard's statement, we find the facts contained in the statement to be inadequate to support a finding of insincerity. At the very most, this statement expresses a suspicion by Lt. Col. Howard that petitioner, in applying for discharge, was not motivated by his religious beliefs. We have indicated above that a mere suspicion is an inadequate basis in fact. *See Dickinson v. United States*, 346 U.S. 389, 391, 74 S.Ct. 152, 98 L.Ed. 132 (1953). Such unsupported assumptions and inferences cannot stand in light of the contrary indications in petitioner's application and letters of recommendation.

## III

Accordingly, the district court's order denying a writ of habeas corpus for the reason that there was a basis in fact for the denial of appellant's conscientious objector status by the Army Conscientious Objector Review Board will be reversed.

---

**14.** Petitioner asserts that the inclusion in his record of these three negative recommendations without his knowledge violated the regulation governing applications for a conscientious objector discharge, AR 635–20, and petitioner's right to administrative due process. Brief for Appellant at 18–22. Because of our holding that there was no basis in fact for the Board's finding of insincerity, we need not reach this question.

**15.** Lt. Col. Howard stated:

b. Lieutenant Shaffer state that in addition to his meditation classes, a triggering influence on his final decision to become a conscientious objector was his inability to justify his position in the military or to rationalize the Vietnam war or any war to the peace oriented, pacifist encounter group of which he was a member. Lieutenant Shaffer does not appear to have the intellectual presence nor aptitude to participate in a verbal confrontation with an intellectual or pseudo intellectual pacifist group experienced in the terminology and dialectic of pacifism and consequently would be susceptible to their influences.

App. at 47a.

**16.** *See Wallace v. Schlesinger*, 500 F.2d 117, 119 (9th Cir. 1974); *United States ex rel. Coates v. Laird*, 494 F.2d 709, 711 n.8 (4th Cir. 1974); *United States ex rel. Checkman v. Laird*, 469 F.2d 773, 780–81 & n.10 (2d Cir. 1972); *Zemke v. Larsen*, 434 F.2d 1281, 1283 (9th Cir. 1970).