**Major Robert J. GOODRICH,**
**Petitioner,**

**v.**

**The Honorable John O. MARSH, Jr.,**
**Secretary of the Army, et al.,**
**Respondents.**

**Civ. A. No. 87–0035–P(J).**

United States District Court,
W.D. Kentucky,
Paducah Division.

May 7, 1987.

Richard P. Fox, Los Angeles, Cal., William E. Scent, Scent & Scent, P.S.C., Paducah, Ky., for petitioner.

Michael F. Spalding, Asst. U.S. Atty., Joseph M. Whittle, Louisville, Ky., Major Paul K. Cascio, Major, JAGC, OTJAG, Department of Army, Washington, D.C., for respondents.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

This case is before the court on a petition for habeas corpus relief. Jurisdiction is claimed under 28 U.S.C. §§ 2241, 1331, and 5 U.S.C. §§ 551–559, 701–706.

Petitioner filed this writ for habeas corpus seeking release from the Army as a conscientious objector (CO). Petitioner is an Army medical doctor, specializing in obstetrics and gynecology, and is stationed at Fort Campbell, Kentucky.

Petitioner initially filed an application for CO status in May 1986. Pursuant to Army procedures, he was interviewed by a chaplain and by an Army psychiatrist to determine the basis for and sincerity of his decision. The chaplain found the petitioner sincere in his beliefs and recommended approval of the application. The psychiatrist also found petitioner sincere, and recommended counseling. Subsequently, a hearing was conducted on his application, at which time Goodrich testified concerning his beliefs. After considering the reports of the chaplain and psychiatrist, and statements by fellow officers and acquaintances, the investigating officer recommended approval of the application. The Commanding Officer at Fort Campbell, Major General Burton D. Patrick, recommended approval of petitioner's application. However, the Army's Conscientious Objector Review Board (CORB) denied petitioner's application on January 13, 1987. Petitioner then filed this action, on January 30, 1987.

## JURISDICTION

Respondent Army argues initially that petitioner should be required to exhaust his administrative remedies by first appealing to the Army Board for Correction of Military Records (ABCMR), prior to pursuing judicial relief. Although the Army admits that it would take the ABCMR a minimum of six months to complete its review of this action and render a decision, it contends that the ABCMR review is a more viable remedy. In contrast, the petitioner, who is entitled to release from duty in July 1988, claims that review before the ABCMR is not mandatory and merely will be used to delay this matter until his legitimate release from duty.

The courts have not consistently required petitioners to submit to ABCMR review prior to pursuing judicial review. In *Ludlum v. Resor*, 507 F.2d 398, 400 (1st Cir. 1974), the court recognized the availability of the administrative procedure and the discretionary function of the trial court in determining the viability of such a procedure. In *Ludlum*, the government indicated to the court that ABCMR review could be disposed of within ninety days, and based on that indication, the court found it to be a more expeditious avenue of relief. However, the court also noted that the government possesses the burden of establishing the resourcefulness of the procedure in each case.

In addition, in *Packard v. Rollins*, 307 F.Supp. 1388 (W.D.Mo.1969), *aff'd* 422 F.2d 525 (8th Cir.1970), the court, relying on its discretion, held ABCMR review unnecessary prior to seeking habeas corpus relief.

Respondents cite no cases which require ABCMR review after an in-service CO application has been denied by the CORB. Therefore, in light of the case law imposing great discretion on the district courts in these matters, the court will not require petitioner to pursue his case before the ABCMR. Petitioner submitted his CO application nearly a year ago, and it would be at least another six months from now before he could expect a decision from the ABCMR. In addition, it is highly likely that petitioner would return to this court following that decision. Therefore, in light of the time constraints involved, and considering petitioner's limited amount of active duty time remaining, this court will exercise jurisdiction over his petition.

## STANDARD OF REVIEW

■ In order to establish a *prima facie* case as a conscientious objector, petitioner must demonstrate that he is opposed to war in any form, *Gillette v. United States*, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971), that this opposition is rooted in "religious training and beliefs," *Welsh v. United States*, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), and that he is sincere in his beliefs. *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Once a CO applicant has met this burden, the CORB carries the burden of showing a basis in fact for denying the application. *Taylor v. Claytor*, 601 F.2d 1102 (9th Cir.1979); *Shaffer v. Schlesinger*, 531 F.2d 124 (3d Cir.1976).

When reviewing the decision of the CORB, the court is limited to determining whether there exists some basis in fact for the decision. Although the standard has been described as "the narrowest review known to law," *Taylor*, 601 F.2d at 1103, "application of this standard to decisions purporting to measure the extent of an individual's sincerity is often an elusive business." *Lobis v. Secretary of the United States Air Force*, 519 F.2d 304, 307 (1st Cir.1975). Therefore, in order to determine if a basis in fact exists for the CORB decision, the court must "thoroughly examine the record and carefully scrutinize the logic and reasoning of the Board." *Rein-*

*hard v. Gorman*, 471 F.Supp. 112, 113 (D.C.1979). This includes searching for "affirmative evidence" to support the CORB findings, or "some proof that is incompatible with the applicant's claims." *Taylor*, 601 F.2d at 1103.

■ In this particular case, petitioner filed a fourteen-page statement along with his CO application, in which he explained the reasons behind his decision to seek such status. The following are several excerpts from petitioner's statement:

I believe in the traditional Judaic interpretation of God as an omnipotent being. Although I do not necessarily believe in the literal translation of biblical and latter interperative (sic) holy works, I do believe in the basic thought of a single deity who is all powerful and transcendent of this world and this universe. I believe that man was created in the image of God, and that to defile the body or to destroy the bodies of others is a sinful act.

It is only in the last two months that I have fully understood the inherently correct way in which these men and their wives (Jewish ancestors) dealt nonviolently with the everpresent ignorance and prejudices of their day.

I also believe that, in contradistinction to "common knowledge," objection to warfare is a common thread throughout Jewish history.

However, it is also my moral beliefs which led me to believe that I should make this request of reclassification as a conscientious objector. I believe it is fundamentally evil to participate in warfare, because, to do so is to destroy other human beings, directly or indirectly. Each of these people was created in God's image. There can be no worse sin for me that (sic) to participate in warfare, this I have come to believe.

I believe that my support of the Armed services is wrong. I would object to supporting war potential in any form; I would object if I were a cook or a mechanic or a street sweeper, as my fundamental opposition is to warfare of any

kind, and simply being in the Army is support of this mission.

Petitioner then states that these beliefs "developed" after a former medical school classmate was killed in the November 1985 suicide terrorist bombing of the American Marine barracks in Beruit, Lebanon, and the December 1985 air crash in Gander, Newfoundland which killed over 250 Fort Campbell servicemen returning from a peace-keeping mission in the Sinai. "This experience led me to review my own feelings on the senselessness of the loss of life, particularly on this scale of magnitude," the petitioner wrote.

The chaplain who interviewed the petitioner following submission of the CO application, concluded that petitioner was sincere in his beliefs and that his beliefs were based on religious and moral opposition to violence associated with war. The chaplain then listed seven specific reasons to support his finding of sincerity.

The interviewing psychiatrist also found that petitioner was sincere in his beliefs, and recommended brief counseling to help him resolve the feelings brought about by the Gander tragedy.

In addition to these statements, the record also contains six separate statements by family and coworkers in support of the petitioner's application and sincerity of his beliefs. The record also contains statements from two officers who did not find the petitioner sincere in his beliefs and who believed that he was merely seeking a way out of the time remaining to be served.

Based on the above information and the testimony of petitioner at an investigative hearing, the investigating officer, Lt. Alexander Galenes, recommended approval of the application. Similar findings were made by the representative from the Staff Judge Advocate's office and by the commanding officer, Maj. Gen. Burton D. Patrick. However, as stated earlier, the members of the CORB voted to reject the petitioner's application.

Based on the petitioner's written statement and his statements at the hearing, the court finds that he has presented a *prima facie* case in support of CO status. The court must now determine if the CORB's

rejection of that status is supported by facts.

■ In determining the existence of a basis in fact for the CORB's decision, the court first looks to the reasons cited by the CORB in support of their decision. It also should be noted at the outset that, not only did the CORB reject petitioner's application, but it also criticized the recommendations of its own investigating officers.

In its opinion, the CORB states that the investigating officer "does not appear to have performed his analysis totally in conformance with AR 600–43 in that he appears to have decided the applicant to be sincere due to an absence of proof to the contrary...." The CORB then points to two items relied upon by the investigating officer which it found inconsistent with his ultimate recommendation of approval:

> The SJA review itself points out that the applicant appears to approve of the use of force for local law enforcement, but does not approve of its use for regional, national or global law enforcement (i.e., war and like conflicts). The SJA also attempts to equate the applicant's Jewish upbringing with his opposition to war, a tenuous argument at best.

The court finds no basis in fact for the above reasoning. First of all, the courts have consistently held that approval of the use of force for local law enforcement is not inconsistent with a conscientious objector's belief against war. In *United States v. Haughton*, 413 F.2d 736, 741–2 (9th Cir. 1969), the court held that the petitioner's willingness to use force to protect a community or prevent one from taking a life was consistent with CO status. In addition, in *United States v. Purvis*, 403 F.2d 555, 563 (2d Cir.1968) the court held:

> Agreement that force can be used to restrain wrongdoing, especially as the last alternative, has little bearing on an attitude toward war. We would not expect a full-fledged conscientious objector to stand by while a madman sprayed Times Square with machine gun bullets or while an assassin took aim at the President.

Therefore, the CORB's finding that petitioner's approval of local law enforcement

is inconsistent with CO status, has no basis in fact.

Second, the CORB criticized the investigating officer's report as inconsistent because it considered the link between petitioner's Jewish upbringing and his CO beliefs as "tenuous." Yet, the CORB gives no reason why such a link is tenuous. The petitioner made a detailed statement in his CO application, explaining both the religious and moral connections to his CO beliefs. In addition, the petitioner attached to his application a document entitled "The Jewish Tradition of Peace." Neither the chaplain, the investigating officer, or other persons who interviewed petitioner found any inconsistency between petitioner's religion and his CO status.

In *Bohnert v. Faulkner*, 438 F.2d 747, 754 (6th Cir.1971), the court held that a similar board's decision that the petitioner's beliefs were inconsistent with his Catholic faith had no basis in fact. The Board based its decision in part on the fact that the Catholic Church did not teach or advocate conscientious objection as a "basic theologic belief." However, the court concluded that a CO classification depends, not on the "religious tenets of an organization of which he is a member," but rather, on the "subjective religious beliefs of the particular individual."

In this case, the CORB cites no evidence to support a finding that the petitioner's subjective religious (Jewish) beliefs were insincere or inconsistent with his claimed CO status. Therefore, the court finds no basis in fact for this conclusion.

The CORB also supports its decision by finding that the investigating officer erroneously relied on an absence of proof of insincerity to support a finding of sincerity. Although the investigating officer did report that "I have no conclusive evidence that Major Goodrich is insincere in the convictions that he professes to hold", the recommendation was also based on much positive evidence of the petitioner's sincerity. The investigating officer's report was a summation of all the evidence presented to him, evidence which overwhelmingly supports a finding of sincerity. In addition, even one of the two officers recommending against granting CO status stated

that he found petitioner sincere. (*See* statement of Lt. Col. Kenneth Farmer). Therefore, the court finds no basis in fact to support this finding of the CORB.

The CORB then criticizes the report submitted by petitioner's supervisor, finding it "totally subjective in origin" because the supervisor was a long-time personal friend of and worked daily with the petitioner. The court finds the board's reliance on this factor to be totally without basis in fact. It cites no specific evidence to support insincerity on the part of the supervisor and no other evidence contrary to his conclusions. The court finds it difficult to imagine how an investigation such as this could be fairly conducted without consulting those most familiar with the applicant's beliefs and lifestyle. Therefore, absent other contrary evidence, this finding is without basis in fact.

The CORB next recites the evidence of the two officers who recommended against granting petitioner's requested CO status. While such is evidence in support of the CORB's decision, when compared with the other evidence in the record, those two reports alone do not support a basis for the CORB decision.

The CORB then notes the petitioner's brother's statement that the applicant is "sincere because he says so and he is a truthful/honorable person." The CORB does not comment on this statement, and the court must merely assume that it was considered by the CORB when rendering its decision.

Finally, the CORB states that while the interviewing chaplain elaborated upon petitioner's history and the content of the interviews, "he does not offer a determination of the applicant's sincerity as a conscientious objector." There is absolutely no basis in fact for this finding, as is evidenced by the following excerpt from the chaplain's report:

6. It is my conclusion that Maj Goodrich is sincere in his opinion and convictions. The feelings that he had had come lately through an extended wrestling of the mind. The specifics that I can point to that substantiate my conclusions are as follows;

a. He is refusing to accept his incentive specialty pay for this period.

b. In all of our talking together he has not once showed a contradiction of his own thoughts or opinions as the conversation ranged from subject to subject and swung from pole to pole.

c. I exercised a determination not to place Maj Goodrich into a feeling of having to convince me of his sincerity and yet it showed through. When relating the experience of his patients affected by the Gander Crash tears came to his eyes. I detected no determination on his part to produce an emotional experience to impress me but rather the reverse of his attempting to stiffle the emotional expression.

d. When demonstrating to Maj Goodrich my opinions which are divergent from his, I saw no attempt on his part to temper his convictions to match mine to curry my favor. Neither did I detect from him any negative evaluations of my beliefs. He was at once both grounded enough not to be swayed but not critical to be offensive.

e. When asked what he would do if his request for Conscientious Objection were denied his response was that he would try to re-apply.

f. I could see no environmental factor which could precipate his request at this time such as field duty, coming hardship deployment, etc ... none were indicated. He is motivated to finish this task before any real military emergency should arise compounding his intrapersonal conflict with war by this being detailed to a combat related task.

g. His clean military record as an officer and his overall bearing and attitude which showed no vindictiveness or grudge towards the Army or it's (sic) personnel, some of which are his good friends.

In addition to these specific findings of sincerity, the chaplain's report includes a detailed synopsis of the religious and moral nature of the petitioner's beliefs, how petitioner perceives his role as inconsistent with those beliefs, and the consistency of petitioner's lifestyle with his beliefs. After reviewing the chaplain's report, the court finds absolutely no basis in fact for the CORB finding that the chaplain failed to offer a determination of the petitioner's sincerity.

Having reviewed the record to discover if the CORB's decision was based in fact, the court finds no factual bases to support the CORB's decision. On the contrary, the evidence overwhelmingly favors a finding of sincerity on the part of the petitioner, and having established his *prima facie* case, the CORB failed to meet its burden to establish a basis in fact for its decision.

While the court recognizes the need to analyze this situation somewhat subjectively and to limit its review to determine if the facts in *this case* supported the CORB's decision, the court must note two other conscientious objector cases in comparison.

In *Shaffer v. Schlesinger*, the court found no basis in fact to support a CORB decision denying the petitioner's CO application. The petitioner was a member of ROTC in college and received a deferment from active duty in order to attend law school. Although the petitioner dropped out of law school after the first week, he did not notify the Army until two years later. One month after he entered active duty, he filed for CO status based on his religious and moral beliefs. Although the interviewing chaplain found him sincere, no reasons were cited in support of the conclusion. Two interviewing officers found him insincere in his beliefs and the commanding officers recommended denial of his petition. The CORB then rejected his application.

On review, the court held that the board failed to support its finding of insincerity and stated as follows:

> The Board must show some hard, reliable, provable, facts which would provide a basis for disbelieving the applicant's sincerity, or it must show something concrete in the record which substantially blurs the picture painted by the applicant.... A mere suspicion or surmise as to an applicant's motivation is not a basis in fact.

*Shaffer*, 531 F.2d at 128.

In addition, in *Lobis v. Secretary of the United States Air Force*, the petitioner

joined the Air Force under a plan permitting him to pursue specialized medical training. After completing his residency, he was scheduled to serve two years of active duty as a psychiatrist. He applied for, and received, a two-year deferment from active duty service and then filed for CO status when the deferment expired. All interviewing officers recommended denial of the petition, finding him insincere because he did not file for CO status until faced with active duty. Although the investigating officer recommended granting the application, the CORB rejected it. The court reversed, holding that the time of filing was an insufficient basis in fact for the decision.

When compared with the facts of the above cases, this situation appears to be more of a justified case for finding in favor of the petitioner. Virtually every person interviewed found the petitioner sincere in his beliefs and recommended granting the application. The reasons given by the CORB to support its decision were not only unsupported by facts, but they were unsupported by the law. Therefore the court will grant the petition for habeas corpus relief.