**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Wesley BROWN, Defendant-**
**Appellant.**

**No. 71-2695.**

United States Court of Appeals,
Fifth Circuit.

March 15, 1972.

Rehearing Denied April 6, 1972.

Mark F. Howell, by Janet Ruesch Pauls, El Paso, Tex., for defendant-appellant.

Seagal V. Wheatley, U. S. Atty., Ralph E. Harris, Asst. U. S. Atty., El Paso, Tex., Victor K. Sizemore, Asst. U. S. Atty., Albuquerque, N. M., William S. Sessions, U. S. Atty., San Antonio, Tex., Edward S. Marquez, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

John Wesley Brown appeals his nonjury conviction of failing to submit to induction into the armed forces. 50 U.S.C.A. App. § 462(a). His sole defense was that his local board had unlawfully refused to classify him as a conscientious objector. After a full trial upon the merits, the district judge found that there was a "basis in fact" for the board's action, Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567, 573 (1946), and consequently adjudged Brown guilty. We affirm.

Brown first registered with his local board on May 18, 1967, but made no claim to conscientious objector status at that time, although he was shortly thereafter classified 1–A. He later applied for and received a 2–S undergraduate student deferment, because he had become a freshman at the University of Texas. He retained this deferment until he was placed on scholastic probation and failed to register for the spring 1970 semester. He was then reclassified 1–A and ordered to report for armed forces physical examination. He submitted a "current information questionnaire" on May 6, 1970, which indicated that he had completed two years of college, but still made no conscientious objector claim. Brown was ordered to report for induction July 20, 1970, and on that date indicated to officials in charge that he would refuse induction on the ground that he was opposed to all war. On August 4, 1970, he first formally notified his local board of his claim, stating: "I became aware that I am a conscientious objector once I was notified of induction. I would like to request a 150 form to file for conscientious objector."

Brown thereupon filed his SSS Form 150 with the local board, and also forwarded a letter to the State Director of the Selective Service System, in both of which he outlined his religious beliefs and stated his opposition to war in all forms. The substantive content of those beliefs is not at issue here. Apparently as a result of his letter, the State Director, pursuant to 32 C.F.R. § 1625.3, requested that the local board reopen Brown's classification and indicated that such reopening would cancel the induction order. The local board thereupon notified Brown that he should appear for a personal interview on August 20, 1971. At that interview, Brown indicated that: he had started thinking about his claim several years before but had not brought it up with the board because he thought it was not based on "religious grounds"; he was attending meetings of the Baha'i faith; he had tried to enlist in the Navy because he felt the Navy was "away from the conflict"; he did not know what he would do if someone were to attack this country; and that he could not explain why he did not realize until he went for induction that he was a conscientious objector. The board then indicated it needed more information, and received from Brown a list of family, friends, and other references who might be helpful in assessing his beliefs. The board contacted the six persons on that list, asking for any personal knowledge each had concerning Brown. Three of these

responded; one indicated he had not sufficient information upon which to base any judgment as to Brown's beliefs, and the other two lent some support to the claims Brown had made. The board also wrote Brown's father asking that he "give any information which would confirm or refute your son's claim that he is a conscientious objector." The reply from Brown's father, George W. Brown, besides indicating displeasure with some of John's friends at the University, also stated that John "has never been religious, and as far as I know he has no claim to being a conscientious objector." After reviewing all information before them, giving special consideration to all letters submitted, the board unanimously concluded that Brown was not sincere and denied his request.

The board took final action on Brown's application on October 15, 1970, by deciding not to reopen his classification after having received an additional letter in his behalf. The board members assigned the following reasons for denying the claim:

1) the lateness of the claim

2) Brown's attempt to enlist in the Navy

3) his recent association with the Baha'i community

4) the letter from his father

The board's decision was unanimously affirmed by the State Appeal Board on November 13, 1970, and Brown was ordered to report for induction January 13, 1971. He at that time again refused to take the symbolic step forward, and the prosecution which is the subject of this appeal ensued.

Two separate attacks are made here by Brown in his effort to undermine the board's classification. He first argues that none of the four reasons listed by the board furnishes a basis in fact for the action taken. Concerning the lateness of his claim, he points out that he would not have had reason to apply for a 1-O classification until he had lost his *lower* 2-S classification, and cannot be penalized for not doing so;[1] that lateness in and of itself will not support a finding of insincerity;[2] and that his undisputed testimony in the court below shows that the sole reason for his lateness was his reliance upon the erroneous advice he received from his aunt, the clerk of the local board, who told him he could not qualify for conscientious objector status. As to the attempt to join the Navy, Brown contends that this is not necessarily inconsistent with his professed beliefs, and that indeed, it was precisely the type of possibility an intelligent person might pursue when his only other alternatives were either prison, or a military commitment his conscience could not abide. Third, Brown asserts that the board must have either been unaware that the Baha'i Community is a religious-pacifist organization, or was prejudiced against its membership since, if anything, his participation therein substantiates his claims. Finally, Brown states before us, as he did at the trial below, that the letter from his father was actually prepared by his grandfather and the same aunt who misled him as to his right to a 1-O classification, and that the two of them cajoled his father into signing the letter while he was intoxicated.

■ The courts are not the super draft board that those who are unsuccessful before their board would have them be. The orderly processing of men into our armed forces—and more importantly, a clear Congressional mandate—will not allow it. Absent the application of some erroneous limiting procedure—a factor not present here—we look only to the record developed before the board to decide whether there was a basis in fact in that record for its decision that Brown was insincere.

■■ Though the underlying policy and the law indeed afford the board an

---

1. United States v. Stetter, 445 F.2d 472 (5th Cir. 1971).

2. Rothfuss v. Resor, 443 F.2d 554 (5th Cir. 1971) [1971].

expansive discretion, it is nevertheless less than an unbridled one. There must be "hard, provable, reliable facts" in the record which provide a basis for disbelieving Brown [3]—facts which so substantially blur the picture he has painted as to cast doubt on his sincerity.[4] Such facts are present here.

The timing of Brown's application was certainly such as to cast doubt upon his veracity and sincerity, and be worthy of the board's consideration. Rothfuss v. Resor, *supra,* 443 F.2d n. 2 at 555; United States v. Henderson, 411 F.2d 224 (5th Cir. 1969). It does not avail Brown to argue that *Rothfuss* forbids denials based *solely* upon the timing of an application. Brown's belated realization of his conscientious objector status did not occur in a vacuum. It was the coalescence of that fact with several others that caused his application to be greeted with unanimous skepticism.[5] The district judge summarized those facts in the following fashion: "it would appear to the Court that due to the shallow, uncertain nature or basis of the Defendant's claim, the sudden acquisition of belief that synchronized so perfectly with the Defendant's poor scholastic record and subsequent loss of his student deferment, as well as his attempt to enlist in the Navy to avoid combat, and the other facts shown in the Board's file, the Court accordingly finds that there is a substantial basis in fact for the denial of the request for classification by the Board of 1–O."

■ We agree with Brown that he should not be faulted for not applying for 1–O status while he was allowed a higher 2–S deferment. However, there is nothing in the record to indicate that Brown was penalized for this delay.

■ We do not find Brown's explanation based upon the advice he received from his aunt sufficient to overcome the adverse inference the board drew from the May to August delay in filing after he was reclassified 1–A. Realizing that this circuit has been less than fully receptive to arguments based upon the misleading of a registrant by the Selective Service, United States v. Taylor, 448 F.2d 349 (5th Cir. 1971), reh. den., Brown urges us to look to decisions of other circuits. However, his situation is completely unlike any of the cases he relies upon. *See, e. g.,* United States v. Fisher, 442 F.2d 109 (7th Cir. 1971); United States v. Burns, 431 F.2d 1070 (10th Cir. 1970). All those cases involve registrants who, due to inexact Selective Service guidance, failed to file any claim at all, or to pursue a timely appeal. But Brown was allowed to make his conscientious objector claim, even though it came long after the board was required to afford him such an opportunity. It then became incumbent upon him to clearly establish his right to the exemption he sought, including one of the most crucial elements of his claim— his own sincerity.

It simply cannot be said that Brown was not fully on notice, after having received what amounted to a special dispensation to make his claim, that his tardiness would be a critical issue before the board. We hold that the burden was then upon him to affirmatively present for the board's evaluation the facts concerning his conversation with his aunt. Having failed to do this, he cannot now fault the board's decision by imputing to them notice of these familial exchanges. Any other decision would only serve to "frustrate administration of the Selec-

---

3. Helwick v. Laird, 438 F.2d 959, 963 (5th Cir. 1971).

4. Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969).

5. While *Rothfuss* bars sole reliance on untimeliness to prove insincerity, it clearly indicates that tardiness coupled with other factors such as an attempt to apply for noncombatant duty, could be sufficient.

tive Service System by permitting a registrant first to stand aloof from the process designed to bring such possibly determinative facts to light . . . and then to challenge the firmness of the factual foundation for his draft board's discretionary actions." United States v. Houston, 433 F.2d 939, 941 (2nd Cir. 1970), quoted with approval in United States v. McDuffie, 443 F.2d 1163, 1165 (5th Cir. 1971). As the Supreme Court said in McKart v. United States, 395 U. S. 185, 198 n. 15, 89 S.Ct. 1657, 1665, n. 15, 23 L.Ed.2d 194, 206 n. 15 (1969), "the smooth functioning of the system may well require that challenges to classifications based upon facts not properly presented to the board be barred." Though this board had no affirmative duty to seek out information that might mitigate the obvious doubt that lateness had cast upon Brown's sincerity, McCoy v. United States, 403 F.2d 896, 899–900 (5th Cir. 1968), we note that at his interview he was specifically asked to explain why he had not realized until induction that he was a conscientious objector, but he could not do so. We conclude that the circumstances surrounding Brown's late claim, in light of the other facts the board knew when it rendered its decision, formed a basis in fact for its denial of the application.

 We deal only briefly with the three other "reasons" offered by the board in support of its decision not to reopen Brown's classification. The explanation Brown offered to demonstrate a consistency between his beliefs and his attempt to join the Navy is a plausible one. But it is not the only one, and we decline to disturb the board's judgment that the context in which the attempt was made was evidence of insincerity.[6] As to the issue of whether or not the letter from Brown's father was actually composed by him, we pause only to note that the dispute was never presented to the board. Apparently, the district judge perceived no reason to consider it.

We refuse to be the first to assess the truth in this episode. The board's final decision in which the letter was specifically mentioned, was rendered October 15, 1970, and even acknowledging that some reasonable time should be allowed to demonstrate the reliability of evidence enumerated therein, the attack here came far too late. Brown's counsel did not alert the board to the possible speciousness of this letter until April 21, 1971, three weeks after Brown had been indicted, when he moved the board to reopen his classification. Clearly this challenge after the process had become complete should be barred. It is imperative to the functioning of the local board that this court not consider de novo the classifications that this body makes, but only review those facts that were properly presented to it in order that we might determine whether they form a basis for the action taken. Courts cannot consider and assess information Brown should have, but did not timely bring to the board's attention. Finally, we agree with Brown that his association with the Baha'i community cannot support the board's finding of insincerity. We are at a loss as to why the board found this fact significant at all; however, as is discussed below, we do not find that the board's stated reliance thereon vitiates the remaining valid grounds for its decision.

In his second attack upon the board's action, Brown contends that if any one reason it gave for the denial of his application is invalid, then no matter how many valid reasons are offered, the denial cannot stand. He attempts to support this position by citing Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971) and its reliance upon Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955), but they do not lend any support to this proposition. In both *Clay* and *Sicurella,* the Department of Justice forwarded a letter to the State Appeals Board recom-

---

6. See note 5, *supra.*

**988**

mending that the particular registrant's request for conscientious objector status be denied. In both cases, the receipt of that letter was followed by the Board's denial of the application without any reason stated; and in both, the Court found the Department's letter to be based, in part, upon impermissible grounds. Since the Board in *Clay* and *Sicurella* made no statement of the reasons for its action, the Court had no way of knowing whether the denial was based upon the impermissible grounds suggested by the Department rather than on some unexpressed legitimate ground. Concluding that the risk was too great that the classifications and subsequent convictions for refusing induction were based on the department's invalid reasons, the Court reversed.

> [W]e feel that this error of law by the Department, to which the Appeal Board might naturally look for guidance on such questions, must vitiate the entire proceedings *at least where it is not clear that the Board relied on some legitimate ground.* Here, where it is impossible to determine on exactly which grounds the Appeal Board decided, the integrity of the Selective Service System demands, at least, that the Government not recommend illegal grounds. United States v. Sicurella, supra, at 392, 75 S.Ct. at 406. (emphasis added)

Here, the local board stated its reasons; we can determine exactly which grounds it relied upon. Speculation is unnecessary. It is clear that all save one of the stated reasons were legitimate grounds. Dismissing that one illegitimate ground, we are satisfied the others are sufficient to provide a basis for the conclusion that Brown was insincere in his professed beliefs.

Inasmuch as Brown has demonstrated no error in the decision below, his conviction is

Affirmed.