Robert A. LOBIS, Petitioner-Appellant,

v.

SECRETARY OF the UNITED
STATES AIR FORCE et al.,
Respondents-Appellees.

No. 75–1058.

United States Court of Appeals,
First Circuit.

Argued May 6, 1975.

Decided June 25, 1975.

Philip A. Mason, Boston, Mass., with whom Mason & Martin, Boston, Mass., was on brief, for appellant.

Marshall D. Stein, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellees.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Appellant joined the Air Force Reserve in June, 1968, under the provisions of the Armed Forces Physicians' Appointment and Residency Consideration Program, commonly known as the "Berry Plan." Under this plan he was permitted to pursue specialized medical training and to complete his residency, as an inactive unattached reservist, upon the agreement that he thereafter serve two years of active military duty, practicing the specialty for which he was trained—psychiatry. In September, 1970, Captain Lobis requested and received an additional one-year delay of his active duty commencement date in order that he might complete additional training in child psychiatry. At that time he indicated that he would be available for assignment to active duty in July 1973.

Captain Lobis completed his residency in psychiatry at the Massachusetts Mental Health Center in Boston, Massachusetts on June 30, 1972, and on July 10, 1972, he was sent a set of forms by the Air Force which were to be completed in preparation for his projected entry on active duty the following year. Rather than completing the forms, however, appellant contacted the Air Force Air Reserve Personnel Center on September 8, 1972, requesting that he be discharged from the Air Force on the ground that he was a conscientious objector. The Center provided appellant instructions on how to file a formal request for conscientious objector status, and Lobis returned his formal application on October 26, 1972, together with a tender of resignation of his commission and several letters supporting his conscientious objector claim.

Appellant's application was processed in accordance with Air Force Regulations, AFR 35–24; 32 C.F.R. Part 888e. Captain Lobis was interviewed by a psychiatric social worker and by an Air Force chaplain, see 32 C.F.R. § 888e.20, prior to being given a hearing before the designated Investigating Officer. The Investigating Officer prepared and forwarded the required written report on appellant's application, finding him to be sincere and recommending that Lobis be classified a 1–0 conscientious objector. See 32 C.F.R. §§ 888e.22–.24. However, all subsequent endorsers in the chain of command, see 32 C.F.R. § 888e.26, recommended disapproval of the application, and the Secretary of the Air Force declined to classify Captain Lobis as a conscientious objector within the meaning of AFR 35.24. In the Secretary's view, "[t]he record indicates that [Lobis'] claim arises from expediency rather than sincere and deeply held convictions."

The Secretary also declined to accept appellant's tender of resignation, and on June 18, 1973, Lobis was ordered to report for active duty. Prior to his reporting date appellant instituted the instant petition for a writ of habeas corpus, seeking release from the custody of the United States Air Force. He subsequently moved for a preliminary injunction restraining the Air Force from requiring him to report for active duty pending the termination of this litigation, and, with the consent of the appellees, the injunction was granted. At the scheduled hearing on the merits each side submitted its case upon the administrative record and briefs which had been filed with the court. The court denied the petition, and this appeal followed.

I

AFR 35–24, which implements for members of the Air Force the national policy concerning conscientious objectors in the Armed Forces set forth in DOD Directive 1300.6, 32 C.F.R. Part 75, provides that Class 1–0 conscientious objector status will be granted any member

"(1) Who is conscientiously opposed to participation in war in any form;

(2) Whose opposition is found on religious training and belief; and

(3) Whose position is sincere and deeply held."

32 C.F.R. § 888e.10(a). The burden of establishing the existence of these criteria is on the applicant, who must show "by clear and convincing evidence:

(1) That the nature or basis of his claim comes within the definition of and criteria prescribed in this part for conscientious objection, and

(2) That his belief in connection therewith is honest, sincere and deeply held."

*Id.* § 888e.10(d).

The Secretary did not dispute that the asserted nature and basis of appellant's claim came within the definition for conscientious objection. Rather, he concluded that Lobis has failed to demonstrate the sincerity of his convictions. The district court upheld the Secretary on the ground that the "record would warrant the inference that the petitioner's claim was not sincere."

## II

■ We have adhered to the view that the applicable standard for reviewing in-service conscientious objector claims is the same as that applied to the review of similar decisions by the Selective Service System—the "basis in fact" of *Estep* v. *United States,* 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). *See Bates* v. *Commander, First Coast Guard District,* 413 F.2d 475, 477 (1st Cir. 1969); *see also* Annot. 10 A.L.R.Fed. 15, 92–93 (1972). As has been recognized, however, application of this standard to decisions purporting to measure the extent of an individual's sincerity is often an elusive business at best. *See Smith* v. *Laird,* 486 F.2d 307, 310 (10th Cir. 1973); *Rothfuss* v. *Resor,* 443 F.2d 554, 558 (5th Cir. 1971).

The Secretary, by adopting the rationale set out in the legal review provided by the Office of the Judge Advocate General, based his finding of insincerity principally upon the timing of Lobis' decision to seek conscientious objector status. After reciting the facts and the standard of eligibility as provided in AFR 35–24, the JAG review reasoned:

"In the present case Captain Lobis has detailed a long evolvement of his CO views from childhood, yet he was able to accept an Air Force commission and obtain deferment under the Berry Plan for over four years to complete residency training, including an additional year's deferment granted in 1970.

It is interesting to note that applicant states, 'I did not feel, one year ago, or even as recently as June 1972, that I was unalterably opposed to all form of participation in all wars on the basis of my moral belief, and consequently I took no action.' Yet a little later he says 'In July of 1972, when I received a letter from the Air Force informing me that I was being programmed for active duty in one year, I knew that the only answer I could give to that letter was a request for discharge as a conscientious objector.'[1]

It is thus apparent that applicant's professed beliefs were insufficient to cause him to take any action until he was faced with the actual military duty which he had previously agreed to perform. The timing of this sudden crystallization of CO views is far too convenient to have been coincidental and can only lead to the conclusion that his CO claim arises from expediency, rather than sincere and deeply held convictions which were the primary controlling force in his life. This application is devoid of evidence that Captain Lobis has changed his life in

---

1. At oral argument counsel for appellees attempted to demonstrate that the difference in appellant's stated beliefs between June and July of 1972 somehow demonstrated the sort of inconsistency which "substantially blurs the picture . . . and thus casts doubt on [the applicant's] sincerity." *Kessler* v. *United States,* 406 F.2d 151, 156 (5th Cir. 1969); *see*

*Lovallo* v. *Resor,* 443 F.2d 1262, 1265 (2d Cir. 1971); *Witmer* v. *United States, infra.* It is hard, however, to perceive actual inconsistency. The timing is perhaps suspiciously convenient; but "crystallization," if accepted as a conceptual possibility, may have occurred between those dates.

any way since his realization of his conscientious objection.

Viewing his actions since 1968 it is clear Captain Lobis was willing to accept whatever benefits were to be derived from his association with the military until that association began to intrude upon his personal and professional life. It was only then that his professed beliefs caused him to seek CO classification. This course of conduct is inconsistent with the sincerity of belief required by AFR 35–24 to earn CO classification."

Though not altogether unpersuasive the foregoing rationale presents serious problems. Principal among these is the controlling weight given to the timing of Captain Lobis' crystallization—a factor which, standing alone, is not usually entitled to overriding weight. And the Air Force has blotted out entirely the finding of sincerity made by its own Investigating Officer who, alone of the persons in the formal review chain, had an opportunity to hear and speak to Lobis.

 As to timing, it is clear that a sincere conscientious objector is entitled to release from his service obligations whether his views crystallize late or early. *Ehlert v. United States,* 402 U.S. 99, 103–04, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971); *see* 50 U.S.C. App. § 456(j); 32 C.F.R. Part 75. To be sure, the sudden crystallizing of CO convictions upon receipt of an induction order or call to active duty may legitimately engender suspicion. Appellant's chronology was, as pointed out, remarkably convenient, and we would not deny this factor some evidentiary weight on the issue of sincerity. But questionable timing has not by itself been deemed a basis-in-fact adequate for the military to reject as insincere an otherwise acceptable CO claim. *See, e. g., Bates, supra; Lovallo v. Resor,* 443 F.2d 1262, 1264–65 (2d Cir. 1971); *United States ex rel. Checkman v. Laird,*

469 F.2d 773, 786 (2d Cir. 1972). If decisive weight could be given to timing, there would be nothing to prevent the services from indulging an absolute presumption against late crystallizers, a presumption which, theoretically at least, might capture not only the world's Sancho Panzas but Don Quixote—and St. Paul—as well.

 It is true that one is more skeptical of the claims of a highly educated adult who reneges on a solemn and knowing agreement than of a younger and perhaps less well-educated individual whose late-crystallized claim was not preceded by a contract to serve made when it was to his advantage. But while the Air Force may justifiably be more suspicious of one who, having reaped all the benefits of his service connection, seeks to reject its burdens, the yardstick applicable to a Berry Plan reservist is the same as that applicable to other servicemen. Captain Lobis' narrative provided a plausible explanation of how his conscientious objections came to crystallize so suddenly in 1972 as a result of concern over reconciling his maturing moral beliefs with his membership in the military. *See Tressan v. Laird,* 454 F.2d 761, 762–63 (9th Cir. 1972). Something more tangible[2] than suspicion is needed to support a finding of insincerity. Otherwise it would be but a short step to denying CO status to all Berry Plan enrollees, sincere or insincere. So long as we accept the possibility that conscientious scruples may flower at any time, and that once arising they take precedence even over contractual commitments, it is not easy to justify giving dispositive weight either to questionable timing or to such factors as a prior Berry Plan commitment.

This court might nonetheless give substantial weight to the element of timing were it reinforced by other evidence. Here, however, the principal other evidence is the Investigating Officer's find-

---

**2.** Lobis' alleged failure to manifest his newfound convictions in a changed life-style, a factor also noted by the Secretary, seems of minor significance at best. Captain Lobis' medical career was of a nature commonly supposed to be oriented towards public service, and there was no evidence, before or after crystallization, of habits or life-style incompatible with sincerely held CO beliefs.

ing of sincerity made after face-to-face interview. The Secretary has simply rejected this. Yet Air Force Regulations provide that in evaluating an applicant's sincerity one of the relevant factors to consider is the applicant's credibility. 32 C.F.R. § 888e.10(c)(2)(ii). To ensure that this factor is taken into account, AFR 35–24 provides that an applicant's sincerity will be evaluated by the two officers, the chaplain and the Investigating Officer, who have had the opportunity of interviewing the applicant and, presumably, of assessing his sincerity through the use of criteria such as demeanor and persuasiveness. 32 C.F.R. §§ 888e.20, .24.

The chaplain who interviewed Captain Lobis, while expressing his opinion that Lobis' convictions did not appear to "differ much from [those of] many of us who have served over twenty years in the Air Force," also stated that appellant's reasons for seeking conscientious objector status "are impressive and honestly portrayed." JAG characterizes the entire report, not unreasonably, as "unresponsive" to the duties imposed upon the chaplain under 32 C.F.R. § 888e.20. Nevertheless, insofar as it means anything it apparently indicates that the chaplain was persuaded that Lobis was sincere.

The Investigating Officer is also directed to evaluate an applicant's sincerity. 32 C.F.R. § 888e.24(d). The Lieutenant Colonel who conducted the hearing on Lobis' application, after questioning him under oath and reviewing the facts of his application, concluded that

"Captain Lobis is a sincere, honest individual and based on moral beliefs, is conscientiously opposed to participation in any war in any form." Since no one else in the chain of command met or interviewed Captain Lobis, this evaluation by the Investigating Officer constitutes the only clear [3] assessment of sincerity in the record made by someone who had the opportunity of questioning the applicant, observing the strengths and weaknesses in his responses, scrutinizing his demeanor and attitude, and receiving a first-hand impression of his persuasiveness in defending the earnestness of his convictions.

When the Investigating Officer's recommendations went to a higher echelon for decision, there was no way for those responsible actually to weigh his findings of sincerity against the adverse circumstantial factors ultimately held to be decisive. No transcript of Captain Lobis' remarks to the Investigating Officer was made, even assuming an adequate credibility assessment could be made from a transcript. The Investigating Officer's favorable assessment was, at worst, ignored and, at best, taken as a statement that nothing unfavorable to Captain Lobis was determined at the personal interview.[4] Under either approach, demeanor evidence was relegated to an inconclusive role; no matter how truthful and impressive Captain Lobis' manifestations of sincerity, they could not have outweighed the circumstantial evidence relied on, since the decisionmakers would have had no way to know whether Captain Lobis was a very compelling witness or only a marginally credible one.

---

3. The psychiatric social worker who examined appellant included in his report the statement, "I cannot challenge the sincerity of [Lobis'] convictions." This observation, classified by appellees as "gratuitous," is at best equivocal on the issue presented here.

4. The local staff judge advocate who prepared the initial legal review of Lobis' application sought to dismiss the Investigating Officer's conclusions on the ground that the Investigating Officer had failed adequately to investigate what he characterized as "discrepancies" in Lobis' record. He seems to have believed that the Investigating Officer had done no more than unquestioningly accept applicant's narrative. Leaving aside whether this criticism was well founded (which we doubt), if the Investigating Officer had not fully performed his duties in conformity with Air Force Regulations, the judge advocate was empowered to return the case to him for further investigation before taking action on the application. 32 C.F.R. § 888e.26. Having failed to remand, the Air Force can scarcely discount the Investigating Officer's report on the basis of purported inadequacies.

We mention this fact not by way of impugning the Secretary's procedures, which are not in issue. It is clear, however, that the Secretary's ultimate decision focused not upon a personalized assessment of Captain Lobis' truthfulness but upon what might seem to be a presumption that a Berry Plan enrollee who crystallizes only after securing the benefits of deferment must necessarily be insincere. We think such a flat rule goes too far, and does not provide a basis-in-fact for a determination of insincerity.

■ This is not to say that first-hand impressions of an applicant's sincerity or credibility can never be outweighed by other evidence on that issue. In *Witmer v. United States,* 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), the Court assumed that the applicant had demonstrated "apparent sincerity" without any indicia of unreliability when presenting his claim, but it went on to hold that "objective facts"—among them inconsistent statements regarding the applicant's beliefs—could cast sufficient doubt on the claim to constitute a basis-in-fact for denial of the desired status. 348 U.S. at 382–84, 75 S.Ct. 392. But where an applicant has established his sincerity to the satisfaction of those charged with interviewing him and has provided plausible explanation for the late crystallization of his beliefs, inferences of insincerity drawn from the timing of the application are insufficient "objective facts" to provide a basis-in-fact for rejecting the claim.

### III

■ As we conclude that on the administrative record there appears no basis in fact for denying Captain Lobis' application for conscientious objector status, the judgment of the district court must be reversed. Nothing has been suggested to us by appellees, nor do we perceive anything in the record, indicating a likely alternative basis for rejecting appellant's request. *Cf. Rothfuss, supra,* 443 F.2d at 559–60; *Checkman, supra,* 469 F.2d at 787–88. It therefore seems appropriate to order the issuance of the writ. *See Bates, supra,* 413 F.2d at 480. However, in view of the possibility that, in light of our decision, the Secretary may now be willing to administratively discharge Lobis in accordance with Air Force Regulations, *see Smith, supra,* 486 F.2d at 315; *Tressan, supra,* 454 F.2d at 763, we leave it to the district court to decide whether or not it will be necessary to issue the writ.

*Reversed and remanded for proceedings consistent with this opinion.*