Michael L. **GOLDSTEIN,**
Petitioner-Appellant,

v.

J. William **MIDDENDORF et al.,**
Respondents-Appellees.

No. 75–1325.

United States Court of Appeals,
First Circuit.

Argued Jan. 8, 1976.
Decided May 26, 1976.

Edward F. Haber, Boston, Mass., with whom Richard P. Fox, Los Angeles, Cal., was on brief, for petitioner-appellant.

Marshall D. Stein, Asst. U. S. Atty., Roxbury, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for respondents-appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Appellant accepted a commission as a Lieutenant in the United States Naval Reserve in March, 1971. The program in which he enrolled, commonly known as the "Berry Plan", allows a physician to defer active military service and complete specialized residency training upon agreement that he will thereafter serve two years of duty practicing his specialty. *See Lobis v. Secretary of United States Air Force,* 519 F.2d 304 (1st Cir. 1975); *Nurnberg v. Froehlke,* 489 F.2d 843 (2d Cir. 1973). The military provides no direct financial assistance to participants in the plan.

On January 16, 1974 Lieutenant Goldstein, who was scheduled to complete his residency in neurology in July of 1974, submitted an application for a conscientious objector (C.O.) status. On March 25, 1974 he received orders to report for active duty in July. Appellant's application for C.O. status was processed according to normal Navy procedures. 32 C.F.R. § 730.18; *see Wallace v. Schlesinger,* 500 F.2d 117, 118 (9th Cir. 1974). He was examined by a Navy psychiatrist who reported that Goldstein did not suffer from any mental disorder, and that his beliefs though "poorly delineated" were "sincerely held." Appellant was then interviewed by a Navy chaplain. *See* 32 C.F.R. § 730.18(g). The chaplain found his beliefs sincere and recom-

mended granting C.O. status. Finally, Lieutenant Goldstein was given a hearing before the designated Investigating Officer, Lieutenant Commander Hewett. The hearing officer prepared and forwarded the required written report on appellant. The report noted there was "no direct evidence" to support disapproval of appellant's application, but concluded, on the basis of "circumstantial evidence" that his beliefs were not sincerely held, and that he was therefore not entitled to C.O. status. Subsequent endorsers in the chain of command, see 32 C.F.R. § 730.18(j)(10) and (k), adopted the hearing officer's recommendation and consequently Lieutenant Goldstein's orders to report for active duty continued in force. He then made application to the district court for a writ of habeas corpus which was denied.[1] Chief Judge Coffin in an unpublished opinion dated September 19, 1975, granted a stay of appellant's call-up to active duty pending the outcome of this appeal.

Navy regulations provide that class 1–0 C.O. status will be granted to any "person who by reasons of conscientious objection, sincerely objects to participation of any kind in war in any form." 32 C.F.R. § 730.-18(b)(1)(i). The applicant has the burden of establishing not only that his beliefs meet existing criteria but also that they are "honest, sincere, and deeply held." *Id.* § 730.18(*o*)(4); *see Lobis v. Secretary of United States Air Force, supra* at 305–06. It is not disputed that the asserted nature of appellant's claim comes within the definition of conscientious objection. The only issue before us is the propriety of the hearing officer's finding of insincerity which was subsequently ratified by the Secretary and upheld by the district court.

■ In *Lobis v. Secretary of the United States Air Force, supra* at 306, we pointed

out that the standard of review applicable to in-service conscientious objector claims as in draft cases was that of "basis-in-fact." We do not engage in "substantial evidence" administrative review, much less do we make our own credibility determination from the cold record. In its effort to apply this standard here, the district court concluded that the Navy's decision must be sustained because the Investigating Officer's first hand interpretation of insincerity gleaned especially from demeanor evidence constituted a basis in fact. *Goldstein v. Middendorf,* D.C., 400 F.Supp. 53 (1975).

We might ordinarily agree. Certainly the district court was correct to recognize the very limited scope of judicial review and the relevance of demeanor evidence to a conscientious objection claim. We emphasized the importance of such evidence in *Lobis,* and Judge Friendly discusses the matter well in *Corliss v. United States,* 2 Cir., 280 F.2d 808, 814–15 (2d Cir.), *cert. denied,* 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960), pointing out that unless judgments of credibility, necessarily personal and imperfect, are accorded weight "mere parrotting" would suffice for a C.O. exemption.

■ What distinguishes the present case is that the Investigating Officer's evaluation of insincerity is accompanied by explicit reliance upon factors that are, at best, irrelevant, and at worst indicative of bias. The question thus arises whether a judgment of insincerity surrounded by such indicia of unreliability must be viewed as furnishing a basis-in-fact. We think not. In *Corliss,* Judge Friendly recognized that in reviewing denial of C.O. status, it is relevant whether the agency or person conducting the hearing is "rational and sincere in disbelieving the sincerity of registrant's be-

---

1. After the Secretary's rejection of his initial request, Lieutenant Goldstein submitted a second application for conscientious objector status. *See* 32 C.F.R. § 730.18(*o*)(6). Although the results of the second round of interviews were favorable and the second hearing officer found appellant's beliefs to be sincere, the application was rejected in December, 1975

by the Chief of Naval Personnel on the ground that it was "not materially different" from the first. Appellant then moved for a remand to the district court for consideration of the propriety of the second rejection of his C.O. claim. We need not pass upon this issue, however, in light of our ultimate disposition here.

lief." *Id.,* 814–15. Here, without meaning to indicate that we will not normally defer to an Investigating Officer's first hand assessment of credibility, we find the present assessment so flawed by obviously improper considerations as to form an inadequate basis-in-fact. In the normal case, this would lead us to return the matter to the service for another hearing before a more objective tribunal. Here we follow a different course only for the reasons we shall set forth below.

The record in this case, apart from the application for discharge and supporting letters, consists primarily of a lengthy transcript of the hearing and the hearing officer's report. In his report the officer relies on three main grounds to support his conclusion of insincerity—demeanor, general credibility, and timing. We shall examine these seriatim.

With regard to demeanor the hearing officer points to two findings as showing insincerity. First, that appellant's answers to questions posed in the hearing were "rambling, disjointed, vague, and generally disorganized . . .," and, second, that appellant cautiously attempted "to make sure that the answer he gave was consistent with his claimed beliefs and did not contradict any previous statement contained in his written application." Initially we examine the second of these findings.

██ While we do not rule out the possibility that a manifestation of overcautiousness may be demonstrable in a hearing record, there can be no support for such a finding in the fact that an applicant has maintained consistency between his written and spoken beliefs. If such a holding were permitted it would confront an applicant with a Hobson's choice: inconsistency would undermine credibility while consistency would be held to be overcautious and disqualifying demeanor.

As to the other demeanor finding, our review of the entire hearing transcript reveals little factual support for the hearing officer's characterization of appellant's answers as vague, disjointed and disorganized. That they were given with a plethora of inelegant "you knows" is true, and they apparently differed from the personal values of the hearing officer, but they appear to us to retain both internal consistency and consistency with appellant's written application in which he stated his beliefs.[2] Although we see little basis for finding inconsistency, disjointedness, and overcautiousness,[3] we might have found that these conclusions regarding the appellant's demeanor constituted an adequate, albeit slender, basis for the hearing officer's decision had the record not contained evidence of substantial countervailing considerations.

Under the second main category, captioned "general credibility," the hearing officer listed six reasons which he felt supported a determination of insincerity. A number of these reasons combine both substantive and demeanor grounds.

Several of these grounds appear to us to be quite trivial, but even as to some of these, the hearing officer's conclusions seem suspect. The first was that the hearing officer could not accept the appellant's be-

---

**2.** There is no indication, nor does the government contend that Lieutenant Goldstein had his application directly available at the hearing or that he actually referred to it in framing his answers.

**3.** An additional reason for questioning the hearing officer's conclusions is his conduct at the hearing. While we realize a hearing officer must "actively and critically examine [an] . . . applicant's beliefs," 32 C.F.R. § 730.-18(j)(2), our impression from reading the hearing transcript in this case indicates that the officer's questioning was at times extremely dogged, with the officer taking on "more the role of advocate than judge," *United States ex rel. Donham v. Resor,* 436 F.2d 751, 754 (2d Cir. 1971); *see Rosenfeld, M. D. v. Rumble,* 515 F.2d 498, 501 (1st Cir.), *cert. denied,* 423 U.S. 911, 96 S.Ct. 214, 46 L.Ed.2d 139, 44 U.S.L.W. 3235 (1975); and we question whether the assumption of such a role might have undermined the objectivity of the subtle judgments required in an assessment of demeanor. While we note that overzealousness may be detrimental to the objectivity of a hearing, we do not hold that a hearing officer may not subject an applicant to a rigorous evaluation of his beliefs; nor is the hearing officer's conduct here determinative of our ultimate disposition. *See* discussion *infra.*

lief that serving as a uniformed pediatric neurologist would strengthen the military, make it easier for it to recruit, and at the same time symbolize total commitment to the military's goals. To the extent that the hearing officer reasoned that no one could reasonably believe that doing his job well would strengthen the organization he served, the hearing officer's conclusion is suspect.[4] The second and third "trivial" grounds for the conclusions regarding demeanor were appellant's statements regarding the professional sacrifices he would face were he not to enter active Navy service and the level of benefits he thought he had received from the Berry Plan. Even if these grounds were amply supported by the record, which they are not,[5] it is difficult to characterize them as other than insubstantial indicia of sincerity or insincerity. The final "trivial" reason the hearing officer relied upon was the absence of an explanation how appellant's medical training "over the last three or four years" had served as a basis for his beliefs and appellant's inability to demonstrate how these beliefs had con-

tributed to a changed life style. On this record, neither factor possesses much significance.[6]

Although none of these reasons are substantial and some are themselves suspect, any errors that occurred in the hearing officer's reasoning as to them are probably harmless. The remaining two grounds for the hearing officer's general conclusion regarding demeanor are quite a different matter. These grounds are so infected by ignorance of the law and/or prejudice against the appellant that they cast substantial doubt upon all the hearing officers findings and conclusions.

■ First, the hearing officer stated, as his fourth reason for doubting appellant's sincerity, that Lieutenant Goldstein had, prior to applying for conscientious objector status, consulted with the American Civil Liberties Union and a legal assistance group at Harvard University. The hearing officer felt that a "truly sincere individual" would have initially consulted with the Navy, and that appellant might have gone to the above-mentioned groups merely to

---

4. The hearing officer, though he considered appellant's reasons "far from clear or convincing", did not explicitly characterize them as invalid, but rather deemed them suspect because they were not articulated clearly and concisely and in his opinion were inconsistent with appellant's willingness to serve in a civilian hospital which would occasionally treat military personnel. Insofar as the hearing officer's conclusions rest on appellant's substantive replies rather than demeanor, our examination of the printed record fails to reveal such inconsistency or inadequacy as to constitute a basis in fact that would impugn appellant's credibility.

5. The hearing officer claimed appellant made a "misleading and self-serving" comparison between his then current salary as a senior resident and the amount he would be earning in the Navy; the examiner felt the more relevant comparison was between a resident's salary and that of a specialist in a major urban area. First, it must be said that the information which the hearing officer seeks to compare is taken out of context from separate portions of the record. The hearing officer's assertion that appellant made a "misleading and self-serving" claim in stating he received no benefits from the Berry Plan is likewise based on a selective reading of the record. A more complete examination indicates appellant was cognizant of the

Plan's allowance for deferring active duty until the completion of specialty training, and other tangential benefits.

6. In his written C.O. application and in the hearing appellant emphasized that his beliefs concerning conscientious objection had crystallized within the preceding year, and he provided extensive description of the development of his ideas during this period. While we would not want to restrict the scope of inquiry so that an examiner could "never rely on facts occurring prior to crystallization as bases for an inference of insincerity . . . ", nevertheless we are inclined to agree that "as the time period between the events and crystallization increases, the probative value of the facts decreases." *Shaffer v. Schlesinger*, 531 F.2d 124 (3d Cir. 1976) (slip op.) at 8 n. 9. Furthermore, as we recently noted in a very similar factual context, appellant's "alleged failure to manifest his newfound convictions in a changed life-style, . . . seems of minor significance at best. [His] . . . medical career was of a nature commonly supposed to be oriented towards public service, and there was no evidence, before or after crystallization, of habits or life-style incompatible with sincerely held CO beliefs." *Lobis v. Secretary of United States Air Force, supra* at 307 n. 2.

determine in advance the essential criteria necessary for a C.O. discharge. An applicant, however, is clearly entitled to be represented by counsel in C.O. proceedings, *see* 32 C.F.R. § 730.18(j)(3), and we think it is impermissible to allow any negative inference about an applicant's sincerity to be drawn from his attempts to procure legal advice from whatever source. That the hearing officer drew this inference not only suggests his ignorance but also casts further doubt on his impartiality and objectivity.

■ Second, the hearing officer stated that he disbelieved the appellant because of Goldstein's statements that he favored both abortion and euthanasia. Such views, the hearing officer asserted, were "incongruous" for a conscientious objector and "manifestly incompatible" with appellant's avowed abhorrence for the intentional killing of another human being. The hearing officer's conclusions are doubly flawed. In the first instance, it appears that the hearing officer, contrary to the governing regulations,[7] reached his conclusion based on the assumption that his own views on two very delicate and controversial moral issues were the correct ones. Secondly, it appears that the hearing officer substantially distorted appellant's stated views in order to find them in square conflict with his own moral beliefs. Appellant assuredly did not express unqualified approval for either abortion or euthanasia. He testified that he would not perform abortions and approved of them only to the extent that he agreed with the Supreme Court's conclusion that, during the first two trimesters of a pregnancy, whether an abortion should be performed should be a matter between a physician and the pregnant woman. As to euthanasia, appellant stated that he would never withdraw life sustaining support from a terminally ill patient. He approved of "euthanasia" only to the extent that there might be instances in which it would be appropriate not to initiate treatment in

hopeless cases and simply to let nature take its course. That the hearing officer would so greatly distort appellant's views in order to order to find them to be in conflict with his own and, at the same time, display such ignorance of the permissible bases for denying a C.O. claim strongly suggests that many of his conclusions were unreliable because they were either infected with bias or based upon ignorance.

■ The third major ground relied on by the hearing officer was appellant's timing of his application for C.O. status (six months prior to the date of his callup for active duty). This factor, however, is not by itself a basis-in-fact for rejecting as insincere an otherwise acceptable C.O. claim, although, together with other evidence, it may be given weight. *Lobis v. Secretary of United States Air Force, supra* at 307; *see Bates v. Commander, First Coast Guard District,* 413 F.2d 475, 477 (1st Cir. 1969); *Lovallo v. Resor,* 443 F.2d 1262, 1264–65 (2d Cir. 1971), *cert. denied,* 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973).

■ Do the various reasons discussed above add up to a basis-in-fact to support a finding of insincerity? A reviewing court must indulge every fair and rational inference in favor of the reasons asserted by the hearing officer, *see United States v. Corliss, supra* at 815. Still, the officer's "disbelief in the sincerity of the claim" must be "honest and rational," *id.* at 814, and "a mere suspicion is an inadequate basis in fact." *Shaffer v. Schlesinger, supra* at 131.

■ Focussing first on the hearing officer's asserted reasons for disbelieving appellant's general credibility, the specific reasons ranged from the insubstantial, to the questionable, to those plainly impermissible. While we are aware that it is necessary to accord weight to reasons we might consider insubstantial if they "could just as rationally . . . [be] deemed" of sufficient import to constitute a basis in fact, *United States v. Corliss, supra* at 815, nevertheless under the circumstances of

---

7. The regulations specifically caution that "[p]articular care must be exercised not to deny the existence of bona fide beliefs simply because those beliefs are incompatible with one's own." 32 C.F.R. § 730.18(o)(3)(ii).

this case we believe that the presence of highly questionable and clearly impermissible grounds created a taint on the other credibility findings which themselves were of dubious substantiality. Furthermore, there is a strong possibility that the credibility findings infected the findings as to demeanor about which we earlier noted our concern that they may have been partially the product of at times nearly adversarial questioning. In sum, the hearing officer's enumeration of separate grounds does not avoid the risk of reliance on improper grounds sought to be prevented by *Clay v. United States,* 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971).[8] While the Supreme Court has suggested that the presence of a valid ground might be sufficient to sustain the hearing officer even though he relied on illegitimate grounds, *United States v. Sicurella,* 348 U.S. 385, 392, 75 S.Ct. 403, 406, 99 L.Ed. 436, 440 (1955), such a rule does not appear to be applicable to the circumstances of the present case where there is a real likelihood that the impermissible considerations tainted the hearing officer's decision on the arguably valid grounds.

To rebut this contention the government relies heavily on *Brown v. United States,* 456 F.2d 983 (5th Cir.), *cert. denied,* 409 U.S. 886, 93 S.Ct. 108, 34 L.Ed.2d 143 (1972), but this case does not establish a contrary proposition. In *Brown* three of the four stated grounds were legitimate and the court, after making a careful assessment, concluded it was unlikely the illegitimate ground affected conclusions as to the others. *Id.* at 987–88. As has been noted, "The general requirement that a court concerned with the validity of an executive determination appraise whether the invalid reasons have not infected the entire decision must be given at least modest scope in the difficult area of conscientious objection cases." *United States ex rel. Checkman v. Laird,* 469 F.2d 773, 788 (2d Cir. 1972) (footnotes omitted).

The government contends that if we consider the possibility of taint we are overturning the basis-in-fact standard of review and adopting instead a rule of prejudicial error that is only appropriate for reviewing administrative action under the substantial evidence test. We do not agree, however. Some consideration of the investigating officer's rationality and sincerity is necessary to safeguard the overall integrity of the hearing and to ensure that an applicant is not "denied . . . the fair interview before an objective judge which the regulations require." *Hollingsworth v. Balcom,* 441 F.2d 419, 424 (6th Cir. 1971). On this record we conclude that the asserted reasons for inferring insincerity in appellant's beliefs are insufficient to provide a basis-in-fact for rejecting his claim. *See Lobis v. Secretary of United States Air Force, supra* at 309.

As we hold that on the administrative record before us there appears no basis in fact for denying Lieutenant Goldstein's application for conscientious objector status, the judgment of the district court must be reversed. While we normally would remand for another hearing this is unnecessary given the fact that one has already taken place with a finding favorable to Goldstein;[9] and the record reveals no other possible basis for a finding of insincerity. In view of the possibility that, in light of our decision, the Secretary may now be willing to administratively discharge Goldstein in accordance with Navy regulations, we leave it to the district court to decide whether it will be necessary to issue the writ. *Id.*

*Reversed and remanded for proceedings consistent with this opinion.*

---

**8.** Because of our view of the hearing officer's report and the reasons set forth therein, we need not consider appellant's argument that the Chief of Navy Personnel's failure to eschew reliance on the impermissible considerations in the hearing officer's report brings the case squarely within the rule of *Clay v. United States, supra.*

**9.** *See* note 1 *supra.*