**John S. F. DALY, Petitioner,**

v.

**W. Graham CLAYTOR, Jr., et al., Respondents.**

Civ. A. No. 78-1044-T.

United States District Court, D. Massachusetts.

June 19, 1979.

Edward F. Haber, Boston, Mass., for petitioner.

Anna R. Tretter, Asst. U. S. Atty., Boston, Mass., for respondents.

## OPINION

TAURO, District Judge.

Petitioner is a physician who accepted a Navy commission in January 1971 under a program that permitted him to defer two years of active duty until he completed his specialized residency training.[1] Shortly before the end of his residency, petitioner was notified by letter that he was scheduled to come on active duty soon after completion of his training. He responded by sub-

---

1. For a description of this program, commonly called "The Berry Plan," see *Goldstein v. Middendorf*, 535 F.2d 1339, 1340 (1st Cir. 1976).

mitting a request in January 1977 for conscientious objector status. The Navy denied his request. Petitioner then filed a petition for habeas corpus with this court, seeking honorable discharge from the Navy.[2] Currently before the court are cross motions for summary judgment.

## I.

The facts in this case are not in dispute. Petitioner's application for C.O. status received standard Navy processing which included examination by an investigating officer, a chaplain and a psychiatrist. *See* 32 C.F.R. § 730.18(g)–(j). The investigating officer determined that petitioner failed to meet his burden "of establishing a convincing case for his contention that 'I cannot in good conscience participate in any way in the military effort'" [sic]. The chaplain found that petitioner's conscientious objections were not held with the depth and devotion of traditional religious beliefs. The psychiatrist, on the other hand, found petitioner to be sincere in his statements and his tenets as a conscientious objector and without psychiatric or psychological disorder.

In September 1977, plaintiff submitted a rebuttal to the report of the investigating officer and chaplain. After review of the petitioner's entire record, petitioner's request for C.O. status was denied by the Chief of Naval Personnel.

## II.

 In his application for C.O. status, petitioner stated: "It is my belief that war, and the destructive violence of war and support of the military which exists to wage war is immoral." Conscientious objector status is available to one whose opposition to war is based on moral or ethical principles that are "held with the strength

of traditional religious convictions." *Welsch v. United States*, 398 U.S. 333, 340, 90 S.Ct. 1792, 1796, 26 L.Ed.2d 308 (1970). There is no dispute that petitioner's assertion stated a case for conscientious objection. The prime issue is whether petitioner satisfied his burden of proving that his beliefs were "honest, sincere, and deeply held." *See Goldstein v. Middendorf*, 535 F.2d 1339, 1341 *citing* 32 C.F.R. § 730.18(o)(4). The Navy determined they were not. This court's limited scope of review is to determine whether a basis-in-fact exists for the classification given by the Navy. *Bates v. Commander, First Coast Guard District*, 413 F.2d 475, 477 (1st Cir. 1969). The court does not make an independent evaluation of petitioner's credibility. *Goldstein v. Middendorf, supra* at 1341.

## III.

Both the investigating and reviewing officers considered it suspect that petitioner's application for C.O. status was filed six years after enlistment and just six months before active duty. The investigating officer thought it significant as well that petitioner filed for C.O. status shortly after being informed that he would be offered a position as a staff physician with the Massachusetts General Hospital. The reviewing officer found it significant that petitioner cited his encounters with violence during his residency at Boston City Hospital as a reason for his new attitude toward the military, but that his application for C.O. status post-dated that residency by three years.

 The timing of a C.O. application is not a sufficient basis-in-fact for a finding of insincerity. *Goldstein v. Middendorf, supra* at 1344. *Goldstein* held that the Navy

---

2. *See* 28 U.S.C. § 2241. Habeas corpus is available to members of the military who claim unlawful retention in the armed forces. *Parisi v. Davidson*, 405 U.S. 34, 39, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). 50 U.S.C. App. § 456(j), *formerly* ch. 625, § 6(j), 62 Stat. 612 (1948) exempts from "combatant training and service" any registrant

who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term "religious training and belief" does not include essentially political, sociological, or philosophical views, or a merely personal moral code.

could not reject an otherwise acceptable C.O. application merely because it was filed six months prior to the applicant's call-up. The court did, however, state that the timing of an application may be given weight, along with other evidence, to determine a basis-in-fact. It is necessary, therefore, to examine the other evidence upon which the Navy relied in denying petitioner's application.

The Navy relied in part on the fact that petitioner had not undergone a significant life-style change since he filed for C.O. status. It was noted that the only evidence of life-style change was petitioner's shunning of violent movies and television. The reviewing officer concluded that petitioner's beliefs did not occupy a position of controlling force in his life.

■ As the First Circuit noted in *Lobis v. Secretary of United States Air Force*, 519 F.2d 304 (1st Cir. 1975), a C.O. applicant's alleged failure "to manifest his newfound convictions in a changed life-style, . . . seems of minor significance at best. [His] . . . medical career was of a nature commonly supposed to be oriented towards public service, and there was no evidence, before or after crystallization, of habits or life-style incompatible with sincerely held C.O. beliefs." 519 F.2d at 307 n.2. *See also Kern v. Laird*, 335 F.Supp. 824, 829 (D.Colo. 1971); *United States v. Gabris*, 302 F.Supp. 235, 239 (E.D.N.Y.1968). The Navy has offered no evidence warranting a finding that petitioner's life-style is inconsistent with his stated beliefs. The court finds, therefore, that petitioner's failure to adopt a new life-style may not serve as a basis-in-fact to support the rejection of petitioner's application.

■ The Navy also considered relevant the fact that petitioner would not be opposed to rendering medical aid to military personnel in the case of an emergency, even though he would be opposed to working in a civilian hospital on contract with the military. This court holds that a physician's willingness to render aid to a member of the armed forces in an emergency is an insufficient basis for denying C.O. status. A contrary holding could require a doctor, in order to qualify for discharge as a conscientious objector, to stand by passively while a human being bled to death merely because of the coincidence that the injured person was a member of the armed forces. Such a requirement could cause a doctor to violate his Hippocratic oath and would be alien to fundamental concepts of respect for the value of human life.[3]

■ The investigating officer specifically stated that he found it especially "taxing on his credibility" that petitioner could resort to force in an "extreme personal situation." As noted above, reliance upon this factor was plainly incorrect. The reviewing officer recognized the investigating officer's error in this regard, and stated that petitioner's answer would not be a consideration in rejecting his application.

■ The final ground relied on by the Navy for denying petitioner's application was the "first hand impressions of the applicant gained by the investigating officer during the course of the hearing . . ." While this court might ordinarily agree that the investigating officer's first hand impressions of insincerity gleaned from the witness' demeanor would be sufficient to constitute a basis-in-fact, first hand impressions do not satisfy the test where the hearing officer's assessment was seriously flawed by improper considerations. *Goldstein v. Middendorf, supra* at 1342.

**3.** This court finds that the question posed by the investigating officer was fundamentally indistinguishable from another question occasionally used in C.O. application hearings; namely, "Would you use violence to defend yourself or your family in a personal emergency?" An affirmative answer to this question has been held by the Supreme Court as not inconsistent with a claim of conscientious objection. *See Gillette v. United States*, 401 U.S. 437, 448, 91 S.Ct. 828, 28 L.Ed.2d 168 (1972).

It is also worth noting that if petitioner had stated that he would not be willing to render aid to a member of the armed forces in an emergency, the investigating officer might well have concluded that petitioner's tolerance of human suffering was inconsistent with his claimed abhorrence of violence. In this respect, the question posed by the investigating officer impermissibly confronted petitioner with a "Hobson's choice." *See Goldstein v. Middendorf, supra* at 1342.

■ Like *Goldstein*, the present case is replete with considerations that are at best irrelevant. The report of the investigating officer evinces reliance upon improper considerations, such as petitioner's willingness to defend himself and his family, which casts doubt upon his findings and conclusions.[4]

### IV.

The only relevant consideration stated in the evaluations by the Navy of petitioner's request for C.O. status was the timing of his application. As noted *supra*, the timing of an application is insufficient by itself to form a basis-in-fact. Additionally, the report of the investigating officer demonstrates that petitioner may well have proven all that was required of him to establish C.O. status. The investigating officer's report stated that he did not find any lack of depth to petitioner's "claimed abhorrence of and moral inability to support essentially impersonal violence," and that "[petitioner's] written application, together with what he stated during the hearing before me, bespeak an abhorrence of violence."

As noted, the investigating officer was impressed with the sincerity of petitioner's abhorrence of violence. If the investigating officer had not employed objectionable criteria, his evaluation of petitioner's application might have been favorable. Had all three Navy interviewers found petitioner's abhorrence of violence to be sincere and deeply held, then this court would be inclined to order petitioner's immediate discharge from the Navy. The Chaplain who interviewed petitioner, however, found that he did not hold his beliefs with the strength of traditional religious convictions. Consequently, in accordance with the Court of Appeals' suggestion in *Goldstein v. Middendorf, supra* at 1345, the case is remanded to the Secretary of the Navy for a new hearing.

An order will issue.

---

4. The investigating officer also found that petitioner's application was "motivated, at least in part, by his seemingly sincere and deeply-felt concern over matters more social than moral and more fundamentally communal than essentially personal." He went on to note that a strong desire " 'to right the wrong' which frequently generates violence" ran through the presentation of petitioner's case.

The court regards petitioner's apparent desire to "right the wrong" as irrelevant in deciding his claim of conscientious objection. The plurality opinion in *Welsh v. United States, supra*, is instructive on this issue.

We certainly do not think that § 6(j)'s [the C.O. statute applicable to the case before the Supreme Court] exclusion of those persons with "essentially political, sociological, or philosophical views or a merely personal moral code" should be read to exclude those who hold strong beliefs about our domestic and foreign affairs or even those whose conscientious objection to participation in all wars is founded to a substantial extent upon considerations of public policy. The two groups of registrants that obviously do fall within these exclusions from the exemption are those whose beliefs are not deeply held and those whose objection to war does not rest at all upon moral, ethical, or religious principle but instead rests solely upon considerations of policy, pragmatism, or expediency.

398 U.S. at 342–43, 90 S.Ct. at 1798.

In light of the fact that the investigating officer found depth of conviction to petitioner's beliefs, as well as a moral inability to support essentially impersonal violence, the court finds that petitioner's incidental desire to politically advance his moral beliefs is an insufficient basis for denying his C.O. application. *See also United States ex rel. Robinson v. Laird*, 457 F.2d 741, 744 (7th Cir. 1972) (denial of C.O. status because petitioner's beliefs "philosophically" insufficient to satisfy basis-in-fact test under *Welsh*).