Christopher Saunders **LAWTON**,
Petitioner,

v.

John **LEHMAN**, Secretary of the Navy, and Admiral Harry D. Train, II, Commander, Service Force, United States Atlantic Fleet, Respondents.

Civ. A. No. 81–845–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Feb. 4, 1982.

Seymour M. Teach, Norfolk, Va., for petitioner.

James A. Metcalfe, Asst. U. S. Atty., Norfolk, Va., for respondents.

## AMENDED ORDER

CLARKE, District Judge.

This matter comes before the Court on Christopher Saunders Lawton's Petition for Writ of Habeas Corpus. In the petition, Lawton asks the Court to issue an Order directing the respondents to discharge him from their custody. Petitioner predicates this request for relief on his conscientious objection to war in any form.

### I.

The material facts in this case are not in dispute. Lawton enlisted in the United States Navy on February 23, 1977, and he began active duty in August 1977. After passing a qualifying examination, petitioner entered a nuclear power program. Six weeks after enrolling in the nuclear power school, a problem arose with his fiancee, and petitioner took fifteen days of unauthorized leave. Although Lawton endeavored to make up for the lost time, he flunked several examinations and was transferred to the USS MOINESTER. Petitioner served with the MOINESTER from April 1979 until January 15, 1981, when the vessel left Fort Lauderdale, Florida, to begin war exercises. Petitioner intentionally missed the MOINESTER's departure because his objection to war "really crystallized" on that date.

Following thirty days of unauthorized absence from the MOINESTER, Lawton reported to military authorities and submitted an Application for Conscientious Objector (C.O.) Status. In accordance with Navy regulations, an investigating officer, Lcdr. Wright, conducted a hearing on the application. His report showed that petitioner held no religious convictions prior to May 1980 which would be consistent with a conscientious objection to war. The report further disclosed, however, that petitioner became a "born again" Christian on May 25, 1980, when he was baptized at the Bay Ridge Baptist Church in Brooklyn, New York.

Notwithstanding a lengthy application documenting petitioner's opposition to war, Lcdr. Wright recommended a denial of C.O. status. In reaching this result, Wright relied on testimony that petitioner had not affiliated himself with any formal religious organizations after returning to Norfolk. Wright also relied on evidence that petitioner made no overt manifestation of his conscientious objection to war until the MOINESTER left Fort Lauderdale. Noting that more than six months intervened between Lawton's baptism and the MOINESTER's departure, Wright determined that reluctance to leave his family and dissatisfaction with the Navy provided the real impetus for petitioner's C.O. application.

Lawton's commanding officer and the Chief of Naval Personnel subsequently reviewed Lcdr. Wright's report. Each person accepted the investigating officer's conclusions and affirmed the denial of C.O. status. Having thus exhausted his administrative remedies, Lawton filed the instant Petition for Habeas Corpus.

## II.

■ Both sides to this controversy agree on the standard of judicial review applicable to in-service C.O. claims. The Court must determine whether there is a "basis-in-fact" for the administrative decision denying C.O. status. *See Goldstein v. Middendorf*, 535 F.2d 1339, 1341 (1st Cir. 1976); *Shaffer v. Schlesinger*, 531 F.2d 124, 127 (3d Cir. 1976). Both sides further agree that successful C.O. applicants must show by clear and convincing evidence that their opposition to war is sincere and deeply held. *See* 32 C.F.R. § 730.18(*o*)(4).

■ Reviewing the instant petition under the basis-in-fact standard, the Court believes that there are no grounds to disturb the final decision of the Department of Navy. In reaching this result, the Court notes that the question of sincerity of belief is an issue of credibility and that the persons who examined petitioner occupy a better position than the Court to assess credibility. *See Goldstein v. Middendorf*, 535 F.2d at 1341 (ordinarily permissible for court to rely on investigating officer's first-hand assessment of sincerity). The record in this case shows that the chaplain and the investigating officer observed Lawton in person. They both recommended a denial of C.O. status on the grounds that dissatisfaction with the Navy, not conscientious objection to war, was the true motive for the C.O. status.[1]

The Court also notes that the timing of petitioner's C.O. application tends to confirm the conclusions of the commanding officer and the Chief of Naval Personnel that family considerations provided a further impetus for Lawton's application. *Cf. LaFranchi v. Seamans*, 536 F.2d 1259, 1260 (9th Cir. 1976) (timing of application for C.O. status relevant to investigating officer's review of application). The facts show that although petitioner was in Fort Lauderdale when the MOINESTER departed for

---

1. The record in this case amply supports a finding that Lawton had become dissatisfied with the Navy. His unauthorized absence from the nuclear training program caused him to flunk out of the program and subjected him to a reduction in rank and a fine of $200. Petitioner then applied to the Polaris Electronics "A" School, but the application was rejected on March 27, 1979. The record also discloses that petitioner became a distributor for Amway in May 1979 and became a marketing consultant in November 1980. Upon these facts, we believe that the respondents could reasonably conclude that dissatisfaction with the Navy was the underlying reason for the C.O. application.

naval exercises, he made no efforts to notify his superior officers that his recently crystallized objection to war precluded his participation in the exercises. The facts instead show that petitioner immediately flew to Seattle to rejoin his wife and daughter and that he did not raise the issue of C.O. status until he reported to naval authorities twenty-nine days later. Inasmuch as petitioner had taken fifteen days of unauthorized leave in December 1978 when a problem arose with his fiancee, this Court believes that the commanding officer and the Chief of Naval Personnel could reasonably conclude that family considerations prompted petitioner's unauthorized absence in January and February of 1981.

Relying on the chaplain's and the investigating officer's assessment of credibility and on the timing of petitioner's application, the Court believes that there is a basis in fact for the respondents' denial of C.O. status. The Court recognizes that the record contains evidence to support petitioner's application. *See, e.g.*, Letter from Rev. Moss W. Armistead to Commanding Officer (May 4, 1981). We nevertheless observe that the basis-in-fact standard imposes an obligation on the respondents only to show there is some evidence in the record to support their decision. *See United States v. Daniel*, 462 F.2d 349, 351 (9th Cir. 1972); *United States v. Joyce*, 437 F.2d 740, 745–46 (7th Cir. 1971). Examining the record pursuant to this standard, we FIND some basis in fact for the respondents' conclusion that the C.O. application served as a pretext to terminate an unsatisfactory relationship with the Navy and to avoid family separation.

### III.

In accordance with this opinion, the Court DENIES the Petition for Writ of Habeas Corpus.